# EXHIBIT 1

Exhibit 1

# PUBLIC INTEREST
## —— LEGAL FOUNDATION ——

*VIA EMAIL and USPS*                                             May 26, 2020

**The Hon. Kathy Boockvar**
**Secretary of the Commonwealth of Pennsylvania**
302 North Office Building
401 North Street
Harrisburg, PA 17120

**Jonathan M. Marks**
**Deputy Secretary for Elections and Commissions**
210 North Office Building
401 North Street
Harrisburg, PA 17120
Email: RA-Elections@pa.gov

      Re:     Voter List Maintenance Leads
                Request for Meeting

Dear Secretary Boockvar and Deputy Secretary Marks:

Our organization—the Public Interest Legal Foundation—is a non-partisan, 501(c)(3) public-interest organization that is dedicated entirely to promoting the integrity of elections nationwide through research, education, remedial programs, and litigation. As part of our mission, we study, audit, and analyze voter rolls throughout the country to assess their health and accuracy. We compare voter roll data against federal and other public or commercial databases to flag registrations that may be incomplete, outdated, or no longer valid. We then submit findings and leads to proper election officials for further investigation and confirmation to better aid voter roll maintenance programs.

We write today to offer you our findings for the Commonwealth of Pennsylvania.

## Summary of Findings and Methodology

1. **Potentially Deceased Registrants with an Active Registration.**

In September 2019, we purchased a copy of the Pennsylvania voter registration extract from your offices. The "active" portion of the extract was compared against the U.S. Social Security Death Index (SSDI), a database made available via the U.S. Social Security Administration. Where possible, voter registration entries were compared against the SSDI *and* printed obituaries and other public notices.

Our analysis showed there were potentially more than **16,600 deceased individuals** with an active registration in the Commonwealth of Pennsylvania at that time. Nearly 50 percent of the entries matched against the SSDI listed a date of death prior to September 2019, the time period

when the roll was purchased. Some matches list dates of death in the 1990s and 2000s. For some, voting credits were apparently assigned for federal contests that occurred after respective dates of SSDI-listed deaths with respect to the 2016 and 2018 General Elections. Only your office can conclusively determine whether these document trails reflecting the voting credits shown in the purchased voter extract are accurate.

In May 2020, we again purchased a copy of the Pennsylvania voter registration extract from your offices. We then compared that extract to our findings from the September 2019 extract to assess whether any of the potentially deceased registrants had been removed in the intervening period. This comparison revealed that **7,323 potentially deceased registrants were removed** from the voter roll between September 2019 and May 2020.

However, **9,300 registrants** who were matched as potentially deceased using the September 2019 voter roll extract were still listed on the May 2020 voter roll extract. This means **there are potentially more than 9,300 deceased individuals that are registered to vote in Pennsylvania.**

As you are likely aware, the National Voter Registration Act of 1993 ("NVRA") requires your office to use reasonable efforts to identify and remove registrants who are deceased. 52 U.S.C. § 20507(a)(4)(A). Pennsylvania law provides that election officials "shall cancel the registration of a registered elector reported dead by the Department of Health," 25 Pa. C.S. § 1505(a), and "may also utilize published newspaper obituaries, letters testamentary or letters of administration issued by the office of the registrar of wills to cancel and remove the registration of an elector," 25 Pa. C.S. § 1505(b).

We have utilized multiple means to verify these potentially deceased registrants, but ultimately only your office can conclusively determine whether the registrants are indeed deceased and whether voting credits were accurately issued for some registrants in subsequent elections.

2. **Potential Duplicate Registrations Across State Lines with Voting Credits Apparently Assigned by Election Officials for the 2018 Election.**

Using voter roll extracts obtained from other states at the same time as the Pennsylvania purchase, we performed a detailed matching analysis to discern the number of registrants who are potentially registered in more than one state. We then viewed voting history reports to discern the number of registrants who were apparently assigned voting credits in more than one state for the same election.

In Pennsylvania, we identified more than **900 potentially duplicated registrations across state lines** with apparent voting credits assigned by election officials in each state for the 2018 General Election. To arrive at this figure, potential matches of full names and dates of birth were filtered through commercial identity-validation services using Social Security data and more. We have utilized multiple means to verify these potentially duplicate registrations but ultimately only your office can conclusively determine whether these registrations are indeed duplications with genuine document trails reflecting the voting credits shown in the purchased voter extract.

We understand that Pennsylvania is a member of the partnership managed by the Electronic Registration Information Center (ERIC). Our analysis could provide additional value because we also relied on data from states who are not members of the ERIC partnership.

3. **Potential Intercounty and Intracounty Duplicates with Apparent Voting Credits Assigned for 2016 and 2018 General Elections.**

Using a similar methodology, we also flagged registrations that are potentially duplicated within the same Pennsylvania county (intracounty) and across county lines (intercounty). We then reviewed assigned voting credits for each such registration. For the 2016 General Election, 13 potential intracounty duplicates were apparently assigned voting credits. For the 2018 General Election, 14 potential intracounty duplicates and 35 potential intercounty duplicates were apparently assigned voting credits.

We have utilized multiple means to verify these potentially duplicate registrations but ultimately only your office can conclusively determine whether these registrations are indeed duplications with genuine document trails reflecting the voting credits shown in the purchased voter extract.

4. **Registrations Indicating 100-Years-of-Age or More.**

Using the May 2020 voter extract, we also identified more than **5,800 registrations** listing a year of birth occurring 100 or more years ago. While there is nothing inherently suspect about these registrations, we flag them so election officials can periodically and easily match them against death records to determine whether they were overlooked during the initial process used to identify deceased registrants, or if separate evidence held within your offices can correct potential recordkeeping errors to the actual dates of birth.

A total of **80** registrations list a year of birth in the 1800s, with the oldest in **1845**. We believe your office would benefit from reviewing and confirming these registrations so that appropriate corrections or updates can be made, if necessary.

5. **Registrations Using Placeholder Data, Missing Data, or Likely Incorrect Data.**

We also identified **more than 1,100 registrations** that potentially list fictitious or intentionally incorrect dates of birth. These registrations commonly list either "01/01/1800" or "01/01/1900" for the registrant's date of birth. Other suspected placeholder data formats are flagged as well. An additional **4 registrations** list a date of birth to suggest they are currently far younger than age 17 and **7 registrations** apparently do not list any date of birth at all.

As you know, date of birth information is an important data point for voter list maintenance purposes. *See, e.g.*, 4 Pa. Code. § 183.6 ("At a minimum, a commission shall identify record matches using an applicant's or registrant's first and last name as well as date of birth."). We therefore believe your office would benefit from reviewing these registrations so that appropriate corrections or updates can be made, if necessary.

6. **Registrations Listing Potentially Out-of-State or Out-of-County Addresses for a Residence.**

Last, we identified **30 registrations** that apparently list a state other than Pennsylvania as a residence, **22 registrations** that apparently do not list a state of residency at all, **3 registrations** that list a residence in a foreign country, and **1 registration** that does not list anything except a zip code for a residential address.

Only your office can determine if these registrations conform to Pennsylvania's requirements.

**Request for Meeting**

We would like to offer our findings to you for further investigation and confirmation. We are available via telephone or videoconference, if needed, to discuss our research and how we can best transfer the data to you. Please let us know which date(s) and time(s) you prefer.

Should you need to contact us regarding this matter, please contact me at lchurchwell@publicinterestlegal.org. Thank you for your service on this matter.

Sincerely,

Logan Churchwell
Communications & Research Director
Public Interest Legal Foundation
lchurchwell@publicinterestlegal.org