## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Public Interest Legal Foundation,<br><br>*Plaintiff,*<br><br>*v.*<br><br>Kathy Boockvar, Secretary of the Commonwealth of Pennsylvania, in her official capacity.<br><br>*Defendant.* | Civ. No. 20-_____ |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Public Interest Legal Foundation ("PILF") respectfully requests this Court to grant it a preliminary injunction preventing Defendant Kathy Boockvar, the Secretary of the Commonwealth of Pennsylvania, from including the names of 21,206 deceased registrants on the election poll books for the upcoming federal election on November 3, 2020. Defendant's inability and/or unwillingness to remove these dead individuals from the voter rolls (and, hence, the election poll books for the imminent federal election) contravenes the National Voter Registration Act ("NVRA") and risks seriously compromising the integrity of, and public confidence in, the election.

Indeed, Congress expressly stated that two purposes for enacting the NVRA are to 1) "to protect the integrity of the electoral process," and 2) "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). Intervention by this Court is critical to safeguard the reliability of the election and ensure that the validity of the poll books containing the list of eligible registrants does not include ineligible deceased registrants.

# TABLE OF CONTENTS

Table of Authorities ...................................................................iv

Table of Exhibits .......................................................................vi

Introduction ..............................................................................1

Factual Background .....................................................................3

Argument ...................................................................................7

Conclusion ...............................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. United States,*
     417 U.S. 211 (1974) ...........................................................14

*Arcia v. Florida Secretary of State,*
     772 F.3d 1335 (11th Cir. 2014) ......................................10, 19

*Bellitto v. Snipes,*
     221 F. Supp.3d 1354 (M.D. Fla. 2016) .............................4

*Common Cause Ind. v. Lawson,*
     937 F.3d 944 (7th Cir. 2019) .............................................4

*Crawford v. Marion Cnty. Election Bd.,*
     553 U.S. 181, 196 (2008) .............................................21

*Greater Phila. Chamber of Commerce v. City of Phila.,*
     949 F.3d 116 (3rd Cir. 2020) .........................................7

*In re Bright's Contested Election,*
     292 Pa. 389 (1928) ......................................................10,14

*In re Election Day Judicial Assignments 2019 Election*
*- Tuesday, No. 11 of 2019,* 2019 Phila. Ct. Com. Pl.
     LEXIS 74 (C.P. Aug. 9, 2019) .........................................10

*Marks v. Stinson,* Civ. No. 93-6157,
     1994 WL 146113, at *26-27 (E.D. Pa. Apr. 26, 1994) ............15

*PILF v. Boockvar,*
     370 F. Supp.3d 449 (M.D. Pa. 2019) .................................4

*PILF v. Bennett,* Civ. No. 18-0981, 2019 WL 1116193,
     at *3-4 (S.D. Tex. Feb. 6, 2019) ......................................4

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) …………………………………………17

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3rd Cir. 2017) …………………………………7, 22

*Rockdale Twp. Primary Election,* 61 Pa. D. & C. 167,
  174 (C.P. 1947) ………………………………………………14

*Tex. Democratic Party v. Abbott,*
  961 F.3d 389 (5th Cir. 2020) ……………………………………20

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305, 312 (1982) ……………………………………....8

**STATUTES**

52 U.S.C. § 20507 *et seq.*
(National Voter Registration Act, the "NVRA") ………………*passim*

25 Pa. Cons. Stat. § 1509(a) ……………………………………23

25 Pa. Cons. Stat. § 1901(b)(4)(i) ………………………….......…9

# TABLE OF EXHIBITS

Exhibit 1, Letter to Defendant, May 26, 2020 ...............................4

Exhibit 2, Notice Letter, September 18, 2020 ..............................5

Exhibit 3, Sample Data of Voter Credits ....................................12

Exhibit 4, Court Records of Harold Maxwell ...............................12

Exhibit 5, Court Records of Cowher and Kupershmidt ..................12

Exhibit 6, Court Records of Taylor ...........................................12

Exhibit 7, Florida news report ...............................................12

Exhibit 8, Court Records of Ali ...............................................13

Exhibit 9, Court Records of Murtaugh ......................................13

Exhibit 10, Declaration of Kenneth J. Block ...........................…......20

## INTRODUCTION

Although election litigation challenging every conceivable component of the voting process seems to have proliferated as the November 2020 contest draws near, the focus of this lawsuit is exceedingly narrow. Plaintiff's case is targeted exclusively at the dead, namely, seeking a judicial order directing that Defendant remove tens of thousands of deceased individuals from the state's voting rolls or take other mitigating action regarding these defects in the list of eligible registrants, an action Defendant has heretofore been unwilling to do despite clear notice of the problem and an unequivocal legal obligation to fix it under the NVRA.

As early as May 2020, Plaintiff formally notified Defendant about nearly 10,000 dead registrants who remain on the Commonwealth's voter rolls. As best we can tell, Defendant made little to no effort to remove these individuals from the rolls. Then, nearly a month ago, after expending significant money and diverting its limited time and resources from other jurisdictions, Plaintiff discovered – and promptly notified Defendant – that the number of deceased registrants remaining on the voting rolls appeared to be much greater, *more than 21,000* by

conservative estimates. Some of these individuals, in fact, appear to have been on the rolls *for more than a decade* following their death.

After Plaintiff identified the specific names of these apparently dead registrants to Defendant, Defendant went silent. Plaintiff continued to purchase, at great expense, the latest versions of the Commonwealth's voter list, in order to assess whether Defendant was undertaking any sort of effort to remove these deceased individuals from the rolls. The answer, sadly, was no.

In the wake of Defendant's forbearance, Plaintiff brings this action to demand the enforcement of the NVRA and thereby prevent the use of lists containing 21,206 registrants who are ineligible to vote from being utilized in the upcoming election on November 3, 2020).

Poll books are the deciding factor in determining whether an absentee or other mailed-in ballot will be accepted and whether someone appearing in person to vote will receive a regular ballot or a provisional ballot. If Defendant is permitted to include upwards of 21,000 names of ineligible deceased voters in the poll books, the validity of those poll books is substantially undermined. Poll workers and county election commission officials, meanwhile, are left without an

accurate source to verify the legitimacy of a potential voter's registration. This is a substantial problem both for election officials on Election Day as well as those processing absentee and mail-in ballot requests. The law demands compliance with the NVRA's list maintenance requirements – particularly the removal of dead individuals from the rolls – in order to preserve the integrity of the electoral process. The continued presence of tens of thousands of likely dead voters on the rolls for significant periods of time is powerful – one might even say indisputable – evidence of the unreasonableness of Defendant's efforts. Before the problem gets any worse and the impact of Defendant's nonfeasance potentially explodes into a national catastrophe, judicial intervention is now necessary.

## FACTUAL BACKGROUND

The Plaintiff is a non-partisan, non-profit, public interest organization established to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. Over the last five years, Plaintiff has dedicated significant time and resources to ensure that voter rolls in the Commonwealth of Pennsylvania do not include ineligible registrants. Its standing to

pursue litigation enforcing Section 8 of the NVRA has been consistently recognized by federal courts throughout the United States, including this Court. *See, e.g., PILF v. Boockvar*, 370 F. Supp.3d 449, 454-56 (M.D. Pa. 2019); *PILF v. Bennett*, Civ. No. 18-0981, 2019 WL 1116193, at *3-4 (S.D. Tex. Feb. 6, 2019); *Bellitto v. Snipes*, 221 F. Supp.3d 1354, 1362-63 (M.D. Fla. 2016); *accord Common Cause Ind. v. Lawson*, 937 F.3d 944, 951-56 (7th Cir. 2019) (describing organizational standing under the NVRA).

Plaintiff first analyzed the accuracy of Pennsylvania's voter rolls in early 2020 after obtaining a list of registrants who were classified as "active voters" in the Commonwealth's Statewide Uniform Registry of Electors ("SURE") database as of September 2019. Plaintiff compared the full names and birthdates on the active registrant list to records contained in the Social Security Death Index, various commercial databases, and public obituaries. In the process, Plaintiff discovered approximately 9,300 likely deceased individuals on Pennsylvania's active voter registration list.

In a letter dated May 26, 2020, Plaintiff alerted Defendant to its findings. *See* **Exhibit 1**. In response, Defendant asked Plaintiff for

additional data on Plaintiff's research and methodologies, which Plaintiff provided on July 17, 2020. Yet after receiving this proof indicating that the Commonwealth's voter rolls are woefully noncompliant with federal law requirements, Defendant has refused to communicate further with Plaintiff.

On September 18, 2020, Plaintiff sent Defendant a formal Notice Letter notifying her that the Commonwealth was in violation of the NVRA. The letter recounted Plaintiff's findings and its efforts to communicate with her about bringing the Commonwealth into compliance. *See* **Exhibit 2** ("Notice Letter"). As of the filing of this Complaint, Defendant has still not responded.

**Numbers of Deceased Remaining on the Rolls Are *Increasing***

On September 21, 2020, while waiting (in vain) for Defendant to respond to the Notice Letter, Plaintiff purchased yet another copy of Pennsylvania's voter rolls to determine whether any further effort had been made to conduct list maintenance based on registrant deaths since its previous analysis in May 2020. But this time, Plaintiff researched the *entire statewide voter roll*, including both active and inactive registrants, in an effort to learn whether the Commonwealth was

taking any action whatsoever such as removing deceased registrants in response to Plaintiff's data, regardless of the registrants' classification (i.e., as active or inactive) in the SURE system database.

Plaintiff's updated analysis of the voter rolls confirmed that the number of deceased registrants remaining on the rolls post-death is much greater than it had previously realized. Indeed, as of September 21, 2020, there were 21,248 likely deceased registrants (both active and inactive) on the voter rolls. *See* Complaint, Exhibit 4, filed under seal.

To ensure that the numbers used in this lawsuit were as up to date as possible, Plaintiff purchased yet another copy of the voter rolls – this time updated as of October 7, 2020 – and once again conducted the analysis of the data to assess how many likely dead registrants remained. The numbers barely changed. 21,206 individuals still occupy a spot on the rolls despite indications that they have passed on. *See* Complaint, Exhibit 5, filed under seal. Worse still, 92% of those deceased registrants died prior to October 2019 (i.e., more than a year ago) and nearly 10% have been dead for more than a decade.

In short, even after giving data to Defendant months in advance of the general election that verified and matched thousands of registrants

to the Social Security Death Index, statewide voter rolls remain bloated with over 20,000 likely dead individuals.

## ARGUMENT

When considering whether to grant a preliminary injunction, this Court must consider four factors: (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) whether the public interest weighs in favor of granting the injunction. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). The first two factors are threshold factors, requiring the movant to "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3rd Cir. 2017). The Court then determines whether all four factors, when taken together, balance in favor of granting the requested preliminary relief. *Id.*

A district court's decision to grant a motion for injunctive relief is within its discretion. *Id.* at 178-79. This Court has the power to order equitable relief and to mold its order to the necessities of this specific situation. *Id.* (citations omitted). "Flexibility rather than rigidity" distinguishes the Court's power to grant equitable relief. *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## I.   Plaintiff is Likely to Succeed on the Merits of Its Claims.

Plaintiff is likely to succeed on the merits of its claim that the NVRA mandates that Defendant remove the names of ineligible, deceased registrants from the statewide voter rolls and election poll books.

### A.   Deceased Registrants Must Be Removed From the Voter Rolls.

Congress was emphatic in adopting the NVRA in 1993 that deceased registrants must not remain on the nation's voter rolls. To ensure that this objective was fulfilled, Congress directed every state's chief election official to conduct a program to remove the names of individuals from the official list of voters following their death. 52 U.S.C. § 20507(a)(4)(A). Moreover, although the NVRA generally restricts states from removing ineligible voters from the rolls within

ninety days of a primary or general election, that proscription expressly does *not* apply to the removal of registrants who have died. *Id.* § 20507(c)(2)(B)(i). Registrants who have died may be removed at *any time*. The same is true, incidentally, of Pennsylvania law. *See* 25 PA. CONS. STAT. § 1901(b)(4)(i).

Notably, the NVRA does not say that deceased registrants should be removed only if there is evidence that fraudulent ballots are being cast in their name. Plaintiff has no duty to prove that ballots are cast on behalf of dead people in the Commonwealth, and any evidence of such votes would simply represent icing on the Plaintiff's cake. But the statute does unambiguously impose a duty on the Defendant, as the state's chief election official, *id.* § 20509, to coordinate a reasonable process to excise the deceased registrants from the rolls. The fact that Defendant has allowed more than 21,000 likely dead individuals to remain on the rolls after receiving overwhelming evidence from Plaintiff that those registrants have passed away – some for over a decade - is the hallmark of an unreasonable list maintenance program.

Nor can Defendant hang her hat on any difficulties she may be having in implementing a systematic list maintenance program.

Indeed, where a state has received *individualized information* about ineligible voters on the rolls, the state has an affirmative obligation to strike those individuals from the rolls at any time. *See Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1348 (11th Cir. 2014).

**B. Poll Books Are Presumptive Evidence of Eligibility and Are the Source Used to Verify a Registrant's Eligibility Before their Ballot is Cast or Accepted.**

All names on Pennsylvania's voter registration list are transferred over to the poll books just days before an election. The poll book is used to confirm that a voter is registered and eligible to vote. Its inaccuracy has resulted in charges against election workers in the past. *See e.g., In re Bright's Contested Election*, 292 Pa. 389, 392-93, 141 A. 254, 254-55 (1928). If a person's name is not in the poll book, then that person's eligibility to vote is questioned and they are given a provisional ballot rather than a regular ballot. *In re Election Day Judicial Assignments 2019 Election - Tuesday, No. 11 of 2019*, 2019 Phila. Ct. Com. Pl. LEXIS 74, at *2 (C.P. Aug. 9, 2019).

The names of all registered voters – both active and inactive – are used to process absentee and mail-in ballot applications and ultimately transferred to the official poll books on Election Day. If Defendant is

not enjoined from including in the poll books the names of more than 21,000 likely deceased voters identified by Plaintiff, the poll books' utility as a verification source is negated in large part. Further, if Defendant is allowed to intentionally and knowingly use a verification source that she knows to be inaccurate, even as election officials load the erroneous information into the electronic poll books, then the validity of countless ballots cast in the election are potentially called into question. The accuracy of the poll book is the final gatekeeper to ensure that only eligible registrants are casting ballots. Defendant's willingness to compromise this safeguard must not be countenanced.

## II. **Plaintiff Will Be Irreparably Harmed If an Injunction Is Not Granted.**

### A. **Keeping Names of Deceased Registrants on Pennsylvania's Poll Books Has Allowed Ballots of Apparently Deceased Voters to be Cast in Prior Pennsylvania Elections.**

The data analysis that Plaintiff provided to Defendant last May, as well as additional analyses that Plaintiff has conducted on the Commonwealth's voter rolls, identified many registrants who have been classified as deceased by the Social Security Administration for years, yet their voter records appear to contain voting credits on election dates

that occurred months and even years after their apparent deaths.  *See* **Exhibit 3,** sample of data provided to Defendants in May, 2020.

Unfortunately, the problem of third parties casting other individuals' ballots in this state is hardly a secret. In 2019, a Pennsylvania resident was convicted in Delaware County on charges after confessing that he "routinely picked up girls in Philadelphia" to take back to his residence for the purpose of obtaining absentee ballot signatures from them. *See* **Exhibit 4,** Maxwell case court records.  In 2016, Pennsylvania residents Myron Cowher and Dmitry Kupershmidt were convicted of filling out over 200 mail-in ballots that they obtained from a property manager. *See* **Exhibit 5,** court records. The year before, a Taylor Borough resident named Eugene Taylor pled guilty to fraudulent use of absentee ballots after he persuaded non-residents to register using a local address so that they could cast absentee ballots for him**.** *See* **Exhibit 6.** And just days ago, a resident in Florida was charged with requesting a mail-in ballot for his deceased wife. *See* **Exhibit 7**, media report.

Although mail-in absentee ballots are more common conduits for casting illegal ballots, there have been convictions in Pennsylvania for

impersonation of deceased voters as well. In 2016, Pennsylvania resident Cheryl Ali pled guilty to impersonating her mother at a voting precinct and casting a ballot in her name. *See* **Exhibit 8**, court records of Ali. Another Pennsylvania resident, Laura Murtaugh, was convicted of signing someone else's name in the poll book then voting a ballot for that person. *See* **Exhibit 9,** court records.

To be clear, establishing past instances of voter fraud – or even the very potential of fraud - is not an element in proving an NVRA violation. The preceding examples illustrate that the risk to the integrity of the electoral process from allowing dead registrants to remain on the voter rolls is not simply hypothetical or conjecture. And when this does occur, it causes a dilution of the legal votes cast by qualified electors, a problem that cries out for judicial protection. As the Supreme Court has long recognized:

> The intent to have false votes cast and thereby to injure the right of all voters in a federal election to express their choice of a candidate and to have their expressions of choice given full value and effect, without being diluted or distorted by the casting of fraudulent ballots. . . . The deposit of forged ballots in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial. The right to an honest count is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been

injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States.

*Anderson v. United States*, 417 U.S. 211, 226-27 (1974) (internal citations and quotation marks omitted).

**B.   Ballots Cast By Ineligible Registrants Cannot Be Identified and Culled Out After the Fact.**

Plaintiff and Pennsylvania voters face irreparable harm if an injunction is not issued because an election should not take place that lists ineligible registrants as eligible registrants on the official lists of those eligible to vote.  After the election occurs is too late as any "illegal votes cannot be identified in the box." *In re Bright's Contested Election*, 292 Pa. 389, 393 (1928). Pennsylvania's Supreme Court has long recognized that "void ballots" are unable to be identified and "separated from the legal ballots cast by the citizens." *Rockdale Twp. Primary Election*, 61 Pa. D. & C. 167, 174 (C.P. 1947). Once a ballot makes it past the poll book as eligible to be legally cast, there is no way to "purge the ballot box of the illegal votes." *In re Bright's Contested Election*, 292 Pa. at 393.

Again, evidence of fraud is not an element of an NVRA claim. The history of previous elections shows that there is no second chance, no

opportunity to mitigate or contain the potential damage to the integrity of an election, and hence irreparable harm occurs when the ineligible to vote are listed as eligible.

Such was the case in a prominent 1994 fraudulent ballot case in which there was no way of knowing how many illegal ballots were cast in the election. *See Marks v. Stinson*, Civ. No. 93-6157, 1994 WL 146113, at \*26-27 (E.D. Pa. Apr. 26, 1994). There, the court sought to evaluate the number of illegal ballots cast based on estimates from statisticians. The court noted that a "probability" was the best evidence available. *Id.* ("statistical projection done from the data . . . shows that of 1,757 absentee ballots cast, at least 636 were illegal without even considering the other 'technical illegalities' such as improper delivery and handling by campaign workers.")

Though the occurrence of vote dilution through the acceptance of illegally cast ballots cannot be calculated in advance of the election, it also cannot be calculated with any precision after the election. The only thing it can be is prevented. In a hotly contested presidential election in a state where some experts expect razor-thin margins, the last thing anyone wants, or the country needs, is protracted litigation that could

have easily been avoided by simply removing the deceased voters from the rolls and poll books in the first place.

Congress has passed all the legislation that is necessary to ensure that poll books contain only eligible registrants. The NVRA directed states to create and maintain a statewide voter roll that was "accurate and current." 52 U.S.C. § 20507(b). Nine years later, Congress passed the Help America Vote Act in which it clarified certain expectations and goals of earlier legislation, including the requirement that when a person appears to vote whose name is *not* in the poll book, that individual cannot cast a regular ballot. *Id.* § 21082(a). Instead, that person must cast a provisional ballot and have its validity determined later.

This federal statutory scheme underscores the central importance of accurate poll books on Election Day. Accurate polls books are needed to confirm a person's eligibility to cast a regular ballot, which is the only kind of ballot that is counted without question.

## III. Defendant Will Suffer No Harm From a Preliminary Injunction.

### A. An Injunction Will Not Affect Defendant's Voter Outreach or Defendant's Election Day Activities.

One question courts must address in granting a preliminary injunction shortly before an election is whether doing so will violate the so-called *Purcell* principle. *See Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006) (where an injunction would create confusion before an election, it should be avoided). Here, there is no concern that granting injunctive relief will have any impact whatsoever on voters. The relief Plaintiff seeks is merely that the longstanding, existing law be enforced, not changed or altered in any way. There is no need for Defendant to generate a new procedure or communicate any information to the electorate at the last minute. There is also no chance of voter confusion because – not to put too fine a point on it – the dead have, or at least should have, no right to see their names on the list of eligible voters.

Defendant has been acutely aware of her legal obligation to remove dead registrants from the rolls since the day she took office. Her predecessors have as well, considering that the relevant text of the NVRA has remain unchanged since its passage in 1993. Yet for whatever reason, the Commonwealth has continued to allow tens of thousands of likely deceased individuals to bloat the voter rolls for many years after their death. If there is a system in place that

attempts to remove the dead registrants from the rolls, it is clearly not working effectively. The good news, though, is that the fix is relatively easy and painless: remove the deceased registrants identified by Plaintiff so that there is no chance illegal ballots are cast in their names. As an alternative, the Defendant can take other lesser actions to mitigate the effect of deceased registrants on the list of eligible registrants such as requiring a provisional ballot, or flagging the registrations so someone who presents under that registration verifies their identity before casting a ballot. The remedy in this case need not threaten the rights of legitimate registrants.

The importance of the fact that Plaintiff has *specifically identified – and verified with as meticulous methodology as can be done by private parties – the names* of the 21,206 likely deceased voters who remain on the rolls cannot be emphasized enough. Although it would be well within its rights to do so under the NVRA, Plaintiff is not seeking some general order that the Commonwealth launch a new list maintenance program on the eve of the election. Rather, Plaintiff is requesting that Defendant use the *individualized information* that Plaintiff has provided her to take individualized action regarding each of these

registrants, including procedures available under Pennsylvania law to remove verified deceased registrants from the lists of eligible registrants. Defendant could remove any ineligible registrant for any reason at any time. *See, e.g., Arcia*, 772 F.3d 1348 (NVRA's "90-day Provision would not bar a state from investigating potential non-citizens and removing them on the basis of individualized information, even within the 90-day window.")

**B.    Plaintiff Has Already Identified and Confirmed the Deceased Registrants for Defendant.**

At great expense and effort, Plaintiff has already done the leg work for Defendant by identifying most of the names of the likely deceased registrants who remain on the Commonwealth's list of eligible registrants.  At Defendant's request, Plaintiff even provided Defendant the research and methodologies it used to confirm the identities of these individuals.   After receiving these materials, Defendant cut off all communication with Plaintiff.  That would be fine, of course, if the Defendant then initiated efforts to act on the lists of likely dead registrants that Plaintiff provided.  But that is not what happened.

Plaintiff has continued to periodically order – at great expense and effort – a list of the state's voter rolls in an effort to determine

whether any efforts have been instigated and to identify what part of the system is failing. Recognizing the critical importance of its research being accurate and reliable, at considerable expense, Plaintiff utilized data specialists to normalize the voter rolls, format them for comparison, and then perform multiple layers of commercial database matching exercises designed to produce the most conservative calculations possible. **See Exhibit 10**, Declaration of Ken Block, President of Simpatico Software Systems. The result: by comparing the voter rolls to other available databases, the analysts identified 21,206 deceased registrants on the statewide voter roll as of October 7, 2020.

In short, all that Defendant needs to do is to use the information that Plaintiff provided her office earlier this year in order to carry out her legal duty under the NVRA and take steps to ensure that the list of eligible registrants does not include the names of any ineligible registrants. No conceivable confusion or harm will befall Pennsylvania voters in the process.

**IV.**    **<u>It is in the Public's Interest to Do Everything Possible to Ensure that the Poll Books Contain Only Eligible Registrants Prior to Election Day</u>.**

Plaintiff is requesting that the Court order the enforcement of *existing* law, which is in the public's interest. "Protection of the integrity of the ballot box" is both a public interest and a state concern. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 413 (5th Cir. 2020). Both have an interest in "counting only the votes of eligible voters." *Id.* As Justice Stevens poignantly observed, "the risk of voter fraud is real, and could affect the outcome of a close election." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality opinion of Stevens, J.). "Flagrant examples of such fraud . . . have been documented throughout this Nation's history by respected historians and journalists." *Id.* The public's interest in ensuring a fair presidential election in this turbulent and historic time has never been higher. The country needs a fair election in which the public has great confidence. That necessity should not be permitted to be undermined by allowing Defendant to turn a blind eye to tens of thousands of deceased registrants populating the state's voting rolls and rendering the integrity of the electoral process vulnerable to compromise.

## CONCLUSION

One would have thought that the extremely modest and limited relief Plaintiff seeks here would be non-controversial and would have been promptly implemented by Defendant as soon as it was called to her attention. Frankly, one reasonably would have expected her to have undertaken these actions even without prompting. Yet for reasons that remain inexplicable, Defendant has persistently dragged her feet and refused to take steps to eliminate an easily avoidable vulnerability in what may be one of the most consequential elections in many decades. While total perfection might not be attainable, Defendant's efforts are the antithesis of reasonable. The NVRA demands more, much more.

In the end, Plaintiff has been left with no recourse other than to hail the Defendant into court and seek relief from this tribunal. We now ask the Court to hold Defendant to what the NVRA indisputably requires her to do. More specifically, Plaintiff respectfully requests that the Court enjoin Defendant from adding the names of 21,206 deceased Pennsylvania registrants to the poll books for the November 3 election.

District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 178-79 (3d Cir. 2017). This Court has the discretion to determine the best injunctive relief to prevent the irreparable harm of proceeding with an election with voter rolls and poll books bloated with more than 21,000 likely dead registrants. These individuals, who are no longer with us, should be ordered removed from the voter rolls, kept off the poll books, or at least marked as challenged under Pennsylvania state law. *See* 25 PA. CONS. STAT. § 1509(a) (petition to strike off names from voter roll). What they should not be, however, is ignored.

Respectfully submitted,

For the Plaintiff:

*/s/ Linda A. Kerns*
LAW OFFICES OF LINDA A. KERNS, L.L.C.
1420 Locust St., Ste. 200
Philadelphia, PA 19102
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

Sue Becker (MO 64721)*
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington Street, Suite 1675

Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
sbecker@publicinterestlegal.org

John Eastman (CA 193726)*
CENTER FOR CONSTITUTIONAL
JURISPRUDENCE
c/o Chapman Univ. Fowler Sch. of Law
One University Dr.
Orange, CA 92866
Tel: (877) 855-3330
Fax: (316) 264-1518
jeastman@chapman.edu
Bradley J. Schlozman (KS 17621)*
HINKLE LAW FIRM
1617 N. Waterfront Parkway, Ste. 400
Wichita, KS  67206-6639
Tel: (316) 267-2000
Fax: (316) 264-1518
bschlozman@hinklaw.com

*Application for Admission
Forthcoming