# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | **NO. 1:20-cv-01905** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE JONES** |
| **v.** | : | |
| | : | |
| **KATHY BOOCKVAR, in her official capacity,** | : | **ELECTRONICALLY FILED** |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OF LAW IN IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>

## <u>INTRODUCTION</u>

Plaintiff The Public Interest Legal Foundation ("PILF") asks the Court to summarily and permanently remove the names of 21,206 registered electors from the voter rolls based on analyses performed by unnamed outside vendors and undisclosed data. PILF's motion fails for at least six reasons:

- *First*, the Commonwealth most certainly has a reasonable procedure for removing the names of deceased electors and as a result PILF is not likely to succeed on the merits of its claim that Defendant Secretary of the Commonwealth Kathy Boockvar violated the National Voter Registration Act ("NVRA") by not having such a program.

- *Second*, this Court lacks authority to direct the Secretary to remove names from the rolls because hers is not the office delegated to cancel voter registrations.  That duty is delegated by statute to the counties, none of whom are joined as parties to this action.

- *Third*, this Court is without authority to substitute PILF's (as yet unspecified) analyses for the procedure specifically required by the Pennsylvania Voter Registration Act.  Neither PILF nor the federal courts have authority to dictate to the states precisely how they should conduct their elections.

- *Fourth*, PILF seeks to remove the names of registered voters who are "potentially deceased" or "likely deceased."  Its claim is admittedly speculative and therefore insufficient to justify mandatory injunctive relief.

- *Fifth*, PILF waited until just weeks before the election to file its motion.  Any claimed emergency is of its own making and therefore not a proper basis for injunctive relief.

- *Sixth*, PILF's motion should be denied because federal courts should not alter election procedures on the eve of an election under the *Purcell* principle.

For any or all of these reasons detailed below, PILF fails to establish a basis for mandatory preliminary injunctive relief and its motion should be denied.

## ARGUMENT

With just two weeks to go before the general election, PILF asks this Court to issue a mandatory injunction compelling Secretary Boockvar to summarily and permanently remove the names of more than 21,000 persons from the voting rolls based on PILF'S belief that those persons are "potentially" or "likely" deceased. The motion is fatally defective for a host of reasons and should be denied without further expenditure of time or effort by the Court or the defense. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) ("The applicable Federal Rule [of Civil Procedure 65] does not make a hearing a prerequisite for ruling on a preliminary injunction."); *see also Shavei-Tzion v. Cadles of Grassy Meadows, Inc., LLC*, No. 3:17-0973, 2017 WL 2463171, at *4 (M.D. Pa. June 7, 2017) (denying request for preliminary injunction hearing where "plaintiff's claim is highly unlikely to succeed based on substantive law . . . and there is no factual basis to support the claims and the contention of irreparable harm").

*First*, PILF's motion fails as a matter of law because the Commonwealth has a procedure for removing the names of deceased registrants. Pursuant to, and in full compliance with, the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, the Pennsylvania General Assembly enacted a comprehensive statutory process for identifying and removing from the voting rolls, *inter alia*, the names of persons who have died or changed residence. *See* 25 Pa. C.S. § 1901.

These list maintenance responsibilities are delegated to the "***commissions***"—defined as the county commissioners of each county, 25 Pa. C.S. § 1203(a), (b)(1)—and thus only the counties are statutorily authorized to cancel voter registrations.  25 Pa. C.S. § 1505(a); 25 Pa. C.S. § 1901(a), (b). With regard to cancellation upon death, the General Assembly directed that "[a]n elector's registration ***shall not be canceled except*** as follows: . . . [u]pon the death of the elector ***under section 1505*** (relating to death of registrant)."  25 Pa. C.S. § 1901(a)(2) (emphasis added).  Section 1505 in turn directs that counties "shall cancel the registration of a registered elector reported dead by the Department of Health."  25 Pa. C.S. § 1505(a).  That section also authorizes counties to consider "published newspaper obituaries, letters testamentary or letters of administration issued by the office of the registrar of wills to cancel and remove the registration of an elector, provided that such removals are uniform, nondiscriminatory and in compliance with the Voting Rights Act of 1965 . . . ."  25 Pa. C.S. § 1505(b).[1]

---

[1]   The Pennsylvania Voter Registration Act also mandates the process for counties to follow to identify persons who have not voted and remove their names from the voting rolls unless they take specific action to confirm their registrations. Among other things, counties are statutorily permitted to send a notice to any registered elector who has not voted or appeared to vote during the five-year period before the date of the notice.  25 Pa. C.S. § 1901(b)(3).  Voters who fail to respond to the notice are designated "inactive" and their registrations will be canceled if they fail to vote or appear to vote during the period beginning on the date of the notice and ending on the day after the second general election for federal office that occurs after the date of the notice (*i.e.* the two year period after the notice is

Pursuant to this statutorily mandated program for removal of electors, county election officials removed the names of 91,424 deceased voters in 2018[2] and 95,670[3] deceased voters in 2019.  *See* Declaration of Jonathan M. Marks ¶¶ 4-12. (The Declaration of Jonathan M. Marks is attached hereto as Exhibit "A.")  The existence of this reasonable and effective program defeats PILF's claim under the NVRA and requires rejection of its motion for preliminary injunctive relief due to

---

sent).  25 Pa. C.S. § 1901(c), (d)(1)(ii)(B).  Voters who fail to respond are required to make an affirmation of their eligibility to voter or confirmation of their address before they are permitted to vote in any election.  25 Pa. C.S. § 1901(d)(2)(i)(A). Beyond these measures, the Pennsylvania Voter Registration Act includes additional safeguards to ensure that only qualified electors cast ballots, including processes for verifying identity of in-person and mail-in voters, 25 P.S. § 3050(a.3) (verifying identification of in-person voters); 25 P.S. § 3150.12b(a) (verifying identification for mail-in voters), and imposition of criminal penalties on a person who votes a ballot not issued to himself, 25 P.S. § 3553.

[2]  The Pennsylvania Department of State's Report to the General Assembly identifies the number of voter registrations cancelled in 2018 as 79,178 active voters and 12,246 inactive voters.  The data appears on page 8 of the report which is available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/Annual%20Reports%20on%20Voter%20Registration/2018%20ANNUAL%20REPORT.pdf (last visited October 18, 2020).

[3]  The Pennsylvania Department of State's Report to the General Assembly identifies the number of voter registrations cancelled in 2019 as 83,831active voters and 11,839 inactive voters.  The data appears on page 8 of the report which is available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/Annual%20Reports%20on%20Voter%20Registration/2019%20Annual%20Report.pdf (last visited October 18, 2020).

an inability to show likelihood of success on the merits.  *See P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore*, LLC, 428 F.3d 504, 508 (3d Cir. 2005).

*Second*, this Court lacks authority to direct the Secretary to remove names from the rolls because hers is not the office delegated to cancel voter registration. As detailed above, the Pennsylvania Voter Registration Act delegates to the *counties* the responsibility for canceling voter registrations due to death and other reasons.  25 Pa. C.S. § 1505(a); 25 Pa. C.S. § 1901(a), (b).[4]

*Third*, PILF's motion necessarily fails because the mandatory statutory process does not allow for cancellation of voter registration based on requests from advocacy groups such as PILF.  The cancelation procedures mandated by the

---

[4] PILF well knows that only counties perform list maintenance.  Indeed, PILF commenced an action against the Manager of Elections for Allegheny County in the U.S. District Court for the Western District of Pennsylvania on February 24, 2020 alleging, *inter alia*, that Allegheny County violated the NVRA by allegedly maintaining the names of deceased voters on the voter rolls.  In that action, *Public Interest Legal Foundation v. Voye*, No. 20-279 (W.D. Pa.), PILF conceded that "the County may not remove an eligible registrant unless certain criteria are satisfied."  *See* PILF Response in Opp. to Motion to Intervene by League of Women Voters of Pennsylvania (ECF 29 at 10) (citing 25 Pa. C.S. §§ 1901 and 1328).  Although it knows that county officials are charged with performing list maintenance, PILF made no effort to join any counties in this proceeding. Moreover, PILF delayed commencing this proceeding until just two weeks before the election although it claims to have known more than seven months ago that deceased voters were not timely removed from the rolls.  This delay refutes any suggestion of irreparable harm, as explained herein.

General Assembly in the Pennsylvania Voter Registration Act make no reference to "commercial databases" or the other resources that PILF claims to have utilized to identify voters who are "likely" or "potentially" deceased. (Br. at Ex. 10). This Court is without authority to substitute PILF's (as yet unspecified) analyses for the procedure specifically required by the Election Code. Federal courts have no authority to dictate to the states precisely how they should conduct their elections. *See Thomspon v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (granting stay of preliminary injunction which rewrote election law, noting that "district court exceeded its authority by rewriting Ohio law with its injunction"); *Esshaki v. Whitmer*, 813 F. App'x 170, 172 (6th Cir. 2020) (granting stay of preliminary injunction that rewrote election provision, explaining that "federal courts have no authority to dictate to the States precisely how they should conduct their elections"). For this reason alone, PILF's motion for preliminary injunctive relief must be denied.

*Fourth*, PILF's claim is admittedly speculative and therefore insufficient to justify the mandatory injunctive relief PILF is seeking. PILF concedes that the voter registrations it seeks to cancel do not necessarily coincide with persons who are deceased. To the contrary, PILF refers to the 21,000 individuals on its list as "likely dead," (Compl. (ECF No. 1) ¶ 26), "potentially deceased," (Compl. Exs. 1, 2), "apparently dead," (Br. in Support of Mot. for Prelim. Inj. (ECF No. 5) at 2), or

"likely deceased" (*id.* at 6, 18, 19). Such conjecture is woefully insufficient to justify the drastic relief sought here. A party seeking a mandatory injunction bears a "particularly heavy" burden of demonstrating a right to relief that is "indisputably clear." *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013). And, in the election context, it is the "longstanding and overriding policy in this Commonwealth to protect the elective franchise." *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (citations and internal quotation marks omitted). PILF offers no credible evidence that any of the 21,206 voters it seeks to cancel are actually deceased and no proof that any vote was fraudulently cast in the name of any deceased voter. PILF's admittedly speculative assertions fall far short of the clear showing necessary for mandatory injunctive relief. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802-03 (3d Cir. 1989) (holding that district court abused its discretion in granting preliminary injunction where plaintiff offered "no clear factual record" to substantiate its claim); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 227-28 (3d Cir. 1987) (reversing grant of preliminary injunction because plaintiff's testimony "express[ing] doubts" about ability to secure financing and "concerns" about reputational damage does not establish irreparable harm); *Stein v. Cortes*, 223 F. Supp. 3d 423, 441-42 (E.D. Pa. 2016) (denying mandatory preliminary injunction

where plaintiffs presented no credible evidence of vote tampering) (citing *ECRI*, 809 F.2d at 226).

*Fifth*, any claimed emergency is of PILF's own making and therefore not a proper justification for injunctive relief.  PILF alleges that it obtained the voter roll in September 2019 and "first analyzed the accuracy of Pennsylvania's voter rolls in early 2020," (Compl. ¶ 15); that it wrote to the Department of State concerning its analysis of the data on May 26, 2020, (*id.* ¶ 16 & Ex. 1); and that it wrote again to the Department of State on September 18, 2020 alleging a violation of the NVRA, (*id.* ¶ 19 & Ex. 2).  PILF initiated an action in the Western District against Allegheny County on February 24, 2020.  *See Public Interest Legal Foundation v. Voye, et al.*, Case No. 2:20-CV-279).  PILF also released a report on September 16, 2020 publishing certain assertions regarding the purported presence of deceased voters on the voting rolls of 42 states, including Pennsylvania.[5]  Despite all of this, PILF inexplicably and unreasonably delayed until October 15, 2020—just 19 days before the general election—to move for preliminary injunctive relief in this Court.

_____

[5]  PILF's press release and report are available on its website at https://publicinterestlegal.org/blog/groundbreaking-national-voter-roll-study-reveals-alarming-trends-as-states-prepare-to-vote-by-mail/ and https://publicinterestlegal.org/files/Report-Critical_Condition-Web-FINAL-FINAL.pdf (last visited October 18, 2020).  Interestingly, PILF includes in the report an entirely different estimate of the number of Pennsylvania voters who are suspected of having died.

Even if PILF were able to satisfy the high standard necessary for injunctive relief, and cannot, its delay in bringing this action itself requires that its motion be denied. *See Republican Party of Pa. v. Cortes,* 218 F. Supp. 3d 396, 405 (E.D. Pa. 2016) (denying motion for preliminary injunction due to plaintiffs' delay, explaining: "There was no need for this judicial fire drill and Plaintiffs offer no reasonable explanation or justification for the harried process they created."). Having strategically delayed the filing of this case, PILF's cry of "emergency" should be recognized for what it is: misuse of the litigation system in a desperate attempt to cast doubt on the legitimacy of the November 2020 election.

*Sixth*, PILF's motion should be denied because federal courts should not alter election procedures on the eve of an election. *Republican Nat'l Comm. v. Democratic Nat'l Comm*., ___ U.S. __, 140 S. Ct. 1205, 1207 (2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."); *Thompson*, 959 F.3d at 813 ("[W]e must heed the Supreme Court's warning that federal courts are not supposed to change state election rules as elections approach."). And most importantly, the injunction sought here has the

significant potential, two weeks before a presidential election, to erroneously disenfranchise actual, living, properly registered voters without advance notice and without an opportunity to contest their permanent removal from the voter rolls. The *Purcell* principle and the demands of due process counsel against such arbitrary action so close to the election.

For any or all of these reasons, PILF has not satisfied, and cannot satisfy, the high burden necessary to justify the extraordinary mandatory injunctive relief it seeks. While PILF's motion is fatally and irremediably flawed, there is no dispute that the names of persons who have died should be removed from the voting rolls. Identifying and removing those persons, however, must be done after careful investigation so as not to unlawfully disenfranchise qualified voters who share the same or similar names, birthdates or other personal identifiers. Cancellation simply cannot responsibly be accomplished via an expedited preliminary injunction hearing based on hearsay assertions and undisclosed and untested

analyses just 15 days before the general election.  This Court should deny PILF's

defective and dilatory motion.

Respectfully submitted,

/s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh
John B. Dempsey

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:  October 19, 2020

## **CERTIFICATE OF SERVICE**

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Opposition to Motion for Preliminary Injunction was

served upon the following counsel of record via the Court's ECF system on this

19th day of October, 2020:

Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, L.L.C.
1420 Locust St., Ste. 200
Philadelphia, PA 19102

Sue Becker, Esquire
Public Interest Legal Foundation
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204

John Eastman, Esquire
Center for Constitutional Jurisprudence
c/o Chapman University Fowler School of Law
One University Drive
Orange, CA 92866

Bradley J. Scholzman, Esquire
Hinkle Law Firm
1617 N. Waterfront Parkway, Ste. 400
Witchita, KS 67206-6639

/s/ Daniel T. Brier