# **APPENDIX OF UNPUBLISHED OPINIONS**

*Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456438 (D. Md. Mar. 19, 1999)

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 2 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by Sandy Point Farms, Inc. v. Sandy Point Village, LLC, R.I., January 29, 2019

1999 WL 1456538
United States District Court, D. Maryland.

REGINALD DERRICKSON, et al.
v.
CIRCUIT CITY STORES, INC.

No. DKC 95-3296.
|
Mar. 19, 1999.

**Attorneys and Law Firms**

Warren K. Kaplan, Washington, D.C., Joseph M. Sellers (Cohen, Milstein, et al.), Washington, D.C., Patricia G. Butler, Matthew M. Wolf, William R. O'Brien, Marlin H.S. Dohlman, and Therese K. Francese (Howrey & Simon), Washington, D.C., and David S. Wachen (Baker & Hostetler, LLP), Washington, D.C., for plaintiff.

Andrew L. Lipps and Alisa H. Reff (Swidler & Berlin), Washington, D.C., Gregory W. Homer and Gerald S. Hartman (Anderson, Kill, Olick & Oshinsky), Washington, D.C., David B. Killalea and Leon B. Kellner (Dickstein, Shapiro, Morin and Oshinsky, LLP), Washington, D.C., Jennifer N. Hartog, Washington, D.C., John A. Pirko, Glen Allen, Va., and David E. Nagle, Kelvin L. Newsome, Sharon M. Moon, Deborah S. Donovan and Joseph D. McCluskey (LeClair Ryan), Richmond, Va., for defendant.

**Opinion**

DEBORAH K. CHASANOW, District Judge.

*1 This employment discrimination case comes before the court on Defendant's motion for summary judgment. Defendant claims that the court should grant summary judgment against Plaintiff Demeka Johnson because Plaintiff Johnson signed an arbitration agreement which precludes her from bringing her cause of action. The court ruled on the pending motion once before. In an opinion and order dated May 30, 1997, the court concluded that Defendant's motion for summary judgment must fail because the arbitration agreement was unsupported by consideration. The court certified that decision for interlocutory appeal, and on July 1, 1998, the Court of Appeals for the Fourth Circuit vacated this court's prior decision and remanded the matter for further consideration. On remand, the court concludes that the arbitration agreement fails to provide all the remedies provided by Section 1981 and therefore is unenforceable. Accordingly, the court denies Defendant's motion for summary judgment.

Also presently pending and fully briefed is Defendant's motion in limine to exclude the report of Plaintiff's expert witness, Dr. James L. Medoff. The court grants in part and denies in part Defendant's motion in limine. No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6.

*I. Background*

Plaintiff is an African-American female and a resident of Beltsville, Maryland. On September 6, 1995, Plaintiff filled out, signed and submitted an application for employment at Defendant's Beltsville store. The application included the following arbitration provisions:

Dispute Resolution Agreement--This agreement requires you to arbitrate any legal dispute related to your application for employment or employment with Circuit City. Circuit City will not consider your application unless this agreement is signed.

\* \* \*

The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures affect your legal rights. You may wish to seek legal advice before signing this Dispute Resolution Agreement.

I have read this Agreement and understand that I should read the Dispute Resolution Rules and Procedures over the next few days.

I understand that I may withdraw my consent to this Agreement within three (3) days from the date on which I sign below by notifying the Applicant Screening Department in writing (including my Social Security number and the name of the place at which I applied for employment) that *I am withdrawing my application for employment at Circuit City.*

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 3 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

* * *

I understand that by so notifying the Applicant Screening Department, I will not be bound to this Agreement and that I no longer will be eligible for employment at Circuit City. I recognize that if I sign the Agreement and do not withdraw within three days of signing I will be required to arbitrate any and all employment-related claims I may have against Circuit City, whether or not I become employed by Circuit City.

*2 This Agreement will be enforceable throughout the application process, my employment, and thereafter with respect to any claims arising from or relating to my application or candidacy for employment, employment or cessation of employment with Circuit City. I then must arbitrate all my employment-related claims, and I may not file a lawsuit in court.

Directly beneath Plaintiff's signature appeared the following:

Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above.

This last provision was signed by a representative of Circuit City.

Plaintiff was employed full-time by another company when she applied with Circuit City. In response to her application, Defendant offered Plaintiff seasonal part-time employment at the Beltsville store where she wished to work or, alternatively, offered to forward her application to other Circuit City stores. Plaintiff rejected these offers and was never employed by Defendant.

When Defendant's motion was originally before this court, the court concluded that the arbitration agreement was invalid because it was unsupported by consideration. The court observed that, while Plaintiff was obliged to submit her grievances to arbitration, Defendant was not. Moreover, Defendant was not even obliged "to consider" Plaintiff's application for employment. In essence, the court held that Plaintiff promised to arbitrate her grievances and Defendant promised nothing in return. On interlocutory appeal, the Fourth Circuit disagreed and concluded that Defendant had promised to be bound by the arbitrator's rulings. The court of appeals further held that Defendant's promise to abide by the arbitrator's ruling was adequate consideration to support the agreement. The matter returns to this court for consideration of Plaintiff's other objections to arbitration.

## II. Defendant's Summary Judgement Motion

### A. Summary Judgment Standard

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor* Co., 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson* Co., 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam,* 810 F.2d at 128 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)).

*3 When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving part, *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 [ 77 FEP Cases 1753] (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."*Celotex Corp.,* 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256.

In *Celotex Corp.,* the Supreme Court stated:
In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion,

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 4 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue, for trial."

*Celotex Corp.*, 477 U.S. at 324. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' "*Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."*Anderson*, 477 U.S. at 249-50 (citations omitted).

B. Analysis

The federal courts have long recognized that the Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to that policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"*Id.* Defendant contends that Plaintiff voluntarily agreed to arbitrate her employment-related disputes with Circuit City and should be held to her agreement.

1. Applicability of the Federal Arbitration Act

*4 Plaintiff argues that the federal policy favoring arbitration does not apply to the facts of this case because Section 1 of the FAA exempts employment contracts from its coverage. Section 1 of the FAA specifically excludes "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. §1. The exclusion in Section 1, however, only applies to "those workers involved in the interstate transportation of goods."*Kropfelder v. Snap-On Tools Corp.*, 859 F.Supp. 952, 958 [ 7 IER Cases 1414] (D. Md. 1994). The job for which Plaintiff applied was not related to the interstate transportation of goods, and therefore does not fall within Section 1's exclusion.

Plaintiff also argues that Defendant is not entitled to the FAA's favorable presumption because the arbitration provision at issue here is not a valid and enforceable contract. Plaintiff argues that there was no contract in this instance because Circuit City's application was just that--an application-- and not a contract for employment. Plaintiff's argument runs parallel to her claim that the arbitration agreement was unsupported by consideration, and the Fourth Circuit's opinion in this case refutes Plaintiff's position. In essence, there was a contract in this case--Plaintiff agreed to arbitrate her employment-related grievances with Defendant and, in return, Defendant agreed to live with the rulings of the arbitrator. That minimal agreement to arbitrate is enough of a contract to implicate the provisions of the FAA. See *Cherry v. Wertheim Schroder and Co.*, 868 F.Supp. 830, 835 [ 66 FEP Cases 905] (D.S.C. 1994) (where applicant failed application test and was not hired, court held that the "express language of the application put plaintiff on notice that she was agreeing to be subject to [arbitration] by the mere execution of the application form."); *Townsend v. Smith Barney Shearson, Inc.*, 906 F.Supp. 153, 156 [ 69 FEP Cases 999] (W.D.N.Y. 1995) (plaintiff was bound to arbitrate "upon submission of her signed application").

2. Applicability of the Arbitration Provision

Next, Plaintiff contends that the arbitration provision indicates that the parties only intended it to apply if Defendant hired Plaintiff. To support her argument, Plaintiff points to the language of the arbitration provision, which states that the provision "will be enforceable throughout the application process, my employment, and thereafter" and requires the applicant to "arbitrate all my employment-related claims." Plaintiff makes the most of what little ambiguity there is in the arbitration provision, but her efforts are to no avail.

*5 The construction of a written contract is, in the first instance, a question of law for the Court. *Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306, 596 A.2d 1069 (1991). Initially, the Court must decide whether or not the contract is ambiguous. *Post v. Bregman*, 112 Md.App. 738, 750, 686 A.2d 665 (1996), *rev'd on other grounds,* 349 Md. 142 (1998). In doing so, the Court gives the words of the contract their plain meaning. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389, 488 A.2d 486 (1985). If the contract, is susceptible to a clear and *unambiguous* understanding, its construction is for the Court to determine. *Rothman v. Silver,* 245 Md. 292, 296, 226 A.2d 308 (1967).

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 5 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

Circuit City's application makes it quite clear that it applies both to applicants and employees alike. The application states that "I [the applicant] recognize that if I sign the Agreement and do not withdraw within three days of signing I will be required to arbitrate any and all employment-related claims I may have against Circuit City, *whether or not I become employed by Circuit City.*" (Emphasis added). That language is unambiguous. Moreover, the fact that the application speaks in terms of "employment-related claims" provides further evidence that the arbitration provision applies to applicants. Arguably, if Circuit City had used the term "employment claims", the arbitration provision might have only applied to employees. Instead, Circuit City chose to use the more general term "employment-related claims." There can be no doubt that a decision not to hire an applicant is "employment-related."

Likewise, Plaintiff claims that the Dispute Resolution Rules & Procedures, which were incorporated into the arbitration provision by reference, only apply to Circuit City employees. In support of that claim, Plaintiff first notes that the rules speak exclusively in terms of "Associates", the term Circuit City uses to refer to its employees. Second, Plaintiff observes that, of the remedies provided for in the rules, all but compensatory damages are tied to employment with Circuit City.

Neither of these details changes the fact that the Circuit City application clearly applies the Rules & Procedures to applicants as well as employees. In the application, Defendant uses the term "Associate" generically to refer both to applicants and employees. Specifically, the application states that:

Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above.

Because this passage refers to the as-yet unhired applicant, it is clear that Defendant meant for the term "Associate" to refer to both applicants and employees. Moreover, to the extent there is any ambiguity in the term "Associate", it does not overcome the application's clear expression that the arbitration provision applies to an applicant "whether or not [he or she] becomes employed by Circuit City."

*6 As for the remedies available to applicants, Plaintiff exaggerates the limitations imposed by the Rules & Procedures. Rule 14 states that an Associate, meaning either applicant or employee, is entitled to injunctive relief without limitation, full or partial back pay, compensatory damages, and punitive damages equal to any award of back pay and compensatory damages or $5000, whichever is greater. The only provision of Rule 14 that does not apply to an applicant is reinstatement. Nor is that surprising. If an Associate was not employed by Circuit City in the first place, obviously he or she cannot be reinstated.

### 3. Enforceability of the Arbitration Provision

While Plaintiff exaggerates the limitations imposed on her remedies, she is correct that she does not have all the remedies under the arbitration agreement that she would have under Section 1981. Specifically, Circuit City's Dispute Resolution Rules & Procedures allow only one year of back pay and place a cap on any award of punitive damages. In contrast, Section 1981 provides for back pay going back up to three years from the filing of the suit and punitive damages without limitation. *See Stephens v. South Atlantic Canners, Inc.,* 848 F.2d 484, 489 [ 46 FEP Cases 1723] (4th Cir. 1988) (plaintiff can recover punitive damages under Section 1981); *Howell v. General Elec. Co.,* 836 F.2d 1342, 1988 WL 1045 at *2 (4th Cir. 1988) (Maryland's general three-year statute of limitations governs claims pursuant to Section 1981); *Kornegay v. Burlington Indus., Inc.,* 803 F.2d 787, 788 [ 58 FEP Cases 1688] (4th Cir. 1986) (plaintiff can recover back pay under Section 1981 back to the limit of the applicable statute of limitations).

Plaintiff correctly contends that the Circuit City arbitration provision is unenforceable because it does not provide her with the full set of remedies to which she would be entitled under Section 1981. The Supreme Court has made clear that statutory claims can be arbitrated. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 [ 55 FEP Cases 1116] (1991). The Court pointed out, however, that:

by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; [he or she] only submits to their resolution in an arbitral, rather than a judicial forum.

*Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)). The *Gilmer* Court further recognized that statutory causes of action are often

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 6 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

meant not only to address individual grievances but also to further important social policies. *Gilmer,* 500 U.S. at 27. The Court concluded that an agreement to arbitrate a statutory cause of action is valid if the "prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Id.* at 28.

*7 Punitive damages and back pay are powerful deterrents to employers who might otherwise discriminate on the basis of race. The failure of the Circuit City arbitration provision to provide those remedies shields Circuit City from the full force of Section 1981 and prevents Plaintiff from effectively vindicating her rights. Therefore, the provision is invalid. See *Shankle v. B-G Maint. Management,* 163 F.3d 1230, 1234-35 [ 78 FEP Cases 1057] (10th Cir. 1999) (refusing to compel arbitration where provision required plaintiff to pay one-half of arbitrator's fee); *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1060 [ 76 FEP Cases 1315] (11th Cir. 1998) (refusing to compel arbitration where provision deprived plaintiff of Title VII damages); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482-85 [ 72 FEP Cases 1775] (D.C. Cir. 1997) (observing that arbitration agreement would be invalid if it required Title VII plaintiff to pay all or part of arbitrator's fees); *Graham Oil Co. v. Arco Prods. Co.,* 43 F.3d 1244, 1247-49 (9th Cir. 1994) (refusing to compel arbitration where provision deprived plaintiff of statutorily mandated exemplary damages). Accordingly, this Court will not compel Plaintiff to arbitrate her claims against Defendant.

*III. Defendant's Motion in Limine*

Defendant has also moved for the exclusion of Plaintiffs' expert, Dr. James L. Medoff. Dr. Medoff submitted his expert report as required by Fed. R. Civ. P. 26(a)(2). In his report, Dr. Medoff presented various tables regarding compensation and promotions at Circuit City, and he based his opinion in part on the information in those tables. That information, however, is not the raw data produced by Circuit City. Instead, the tables are based on data that was subjected to various selection, aggregation and weighting processes performed by Dr. Medoff's assistant. Dr. Medoff testified at deposition that he told his assistant in general terms what manipulations and analyses he wanted performed on the data. His assistant then wrote a series of computer instructions using a commercially available statistics program that analyzed the data and produced the tables upon which Dr. Medoff relied.

The court need not waste its time analyzing the work of Dr. Medoff's assistant as the work of a so-called "non-testifying" expert. Dr. Medoff and his assistant worked hand-in-glove, and the fruits of their labor are indivisible. Defendant cannot properly cross-examine Dr. Medoff without first understanding how his assistant manipulated the data. This is not a case where the testifying expert relied on a single, discrete written report by a non-testifying expert. If that were so, Plaintiffs would simply need to produce the non-testifying expert's report. To the contrary, Dr. Medoff's opinions in this matter are the result of a seamless collaboration with his assistant. Under these circumstances, Defendant is entitled to know what Dr. Medoff's assistant did.[1]

*8 Even if the court considered Dr. Medoff's assistant to be a non-testifying expert, the result would be the same. Defendant is not engaging in the sort of free riding that Rule 26(b)(4)(B) was meant to prevent. The purpose of Rule 26(b)(4)(B) is to prevent a party from building its own case through its opponent's diligence. *Good v. GAF Corp.,* 875 F.2d 315, 1989 WL 54017 at *3 (4th Cir. May 23, 1989.). In this instance, Defendant does not seek to build its own case with Dr. Medoff's work but rather seeks to tear down Plaintiffs' case. That is entirely proper. Moreover, Rule 26(b)(4)(B) provides that the "facts known and the opinions held by an expert . . . who is not expected to be called at trial" are discoverable "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Only Dr. Medoff's assistant knows what he did to the data, and because that information is exclusively within the assistant's cognizance, Defendant is entitled to it under Rule 26(b)(4)(B). *See Matter of Interco Inc.,* 146 B.R. 447, 450 (Bankr. E.D. Mo. 1992).

Plaintiffs protest that the computer program used by Medoff's assistant is commercially available and that Defendant can obtain a copy and perform the analysis itself. Plaintiffs' argument borders on the ridiculous. It is like saying that you can know the contents of a novel simply by knowing what model typewriter the author used. Defendant is entitled to know precisely how the data was manipulated, and that requires Plaintiffs to disclose the instructions that Dr. Medoff's assistant entered into the program. Only then can Defendant properly prepare to cross-examine Dr. Medoff.

Defendant requests that the court exclude Dr. Medoff's testimony pursuant to Fed. R. Civ. P. 37(c)(1). Exclusion is

Case 1:20-cv-01905-JEJ   Document 23-3   Filed 10/19/20   Page 7 of 7

Derrickson v. Circuit City Stores, Inc., Not Reported in F.Supp.2d (1999)
1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

a harsh sanction. *Sullivan v. Glock, Inc.,* 175 F.R.D. 497, 504 (D. Md. 1997). Moreover, Rule 37(c)(1) only calls for exclusion where the failure to disclose was "without substantial justification." While the court did not find Plaintiffs' view convincing, it also does not find it so frivolous as to be without substantial justification. Therefore, the court concludes that the appropriate remedy for Plaintiffs' failure to turn over Dr. Medoff's underlying analysis is to require disclosure and provide another opportunity to depose Dr. Medoff.

*IV. Conclusion*

**\*9** For the reasons stated above, Defendant's motion for summary judgment is denied and Defendant's motion to exclude the testimony of Dr. Medoff is granted in part and denied in part. A separate order will be entered.

**Order**

In accordance with the accompanying Memorandum Opinion, IT IS this 19th day of March, 1999, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant Circuit City's motion for summary judgment BE, and the same hereby is, DENIED;

2. Defendant Circuit City's motion to exclude the testimony of Dr. James L. Medoff BE, and the same hereby is, GRANTED in part and DENIED in part;

3. Plaintiff SHALL disclose the details of any analysis performed and supporting documentation created by Dr. Medoff's assistants in the course of preparing Dr. Medoff's expert report and testimony, including but not limited to the computer instructions used to manipulate the data later analyzed by Dr. Medoff; and

4. The clerk is directed to mail a copy of this Order and the accompanying Memorandum Opinion to counsel for the parties.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1456538, 81 Fair Empl.Prac.Cas. (BNA) 1533

Footnotes

1   Indeed under these circumstances, the Court is inclined to think that Defendant cannot only obtain the underlying data but can also depose and cross-examine Dr. Medoff's assistant at trial. That question, however, has not been raised by the parties, and the court does not rule on it.

End of Document                                 © 2020 Thomson Reuters. No claim to original U.S. Government Works.