## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Public Interest Legal Foundation,<br><br>             *Plaintiff,*<br><br>          vs.<br><br>Kathy Boockvar, Secretary of the Commonwealth of Pennsylvania, in her official capacity.<br><br>             *Defendant.* | Civ. No. 1:20-cv-1905 |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation, by and through its attorneys, hereby amends its action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507, against Defendant Kathy Boockvar, in her official capacity as Secretary of the Commonwealth of Pennsylvania.  In support of its action, the Foundation states as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States.

This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

2.    Venue in this Court is proper under 28 U.S.C. § 1391(b), because the Defendant resides in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.    Plaintiff, the Public Interest Legal Foundation, Inc. (the "Foundation"), is a non-partisan, non-profit, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation has dedicated significant time and resources to ensure that voter rolls in the state of Pennsylvania do not contain ineligible registrants. The Foundation produces and disseminates reports, articles, and newsletters in order to advance the public education aspect of its organizational mission, as well as communicates with election officials about problems or defects found in list maintenance practices and about ways to improve those practices.

2

4.   Defendant Kathy Boockvar is the Secretary of the Commonwealth of Pennsylvania and directs the Department of State, which implements, regulates, and administers the Commonwealth's voter registration process known as the SURE ("Statewide Uniform Registry of Electors") system. 25 PA. CONS. STAT. §§ 1201, 1222(a), (e), and (f).

5.   The Foundation has spent many thousands of dollars reviewing Pennsylvania's election procedures and documented failures to maintain an accurate and correct voter roll as required by the NVRA. The Foundation's investigation of the rolls, both then and now, has forced it to incur substantial costs to compare the Commonwealth's voter rolls to the Social Security Death Index, various commercial databases, and other sources in order to identify deceased voters.

6.   Defendant's violations of the NVRA have harmed and continue to harm and frustrate the Foundation's purpose of protecting the integrity of the electoral process and ensuring that accurate and current voter registration rolls are maintained.  The Foundation's expenditure of significant time and money in Pennsylvania seeking to rectify Defendant's failure to clean up the voter rolls by removing the

surfeit of deceased registrants from such rolls has also forced the Foundation to divert its limited resources from other states with similar issues. All of these harms confer standing upon the Foundation to assert the claim raised in this case.

## STATEMENT OF FACTS AND LAW

7. Section 8 of the NVRA requires that the Commonwealth "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of, *inter alia*, the death of the registrant." 52 U.S.C. § 20507(a)(4)(A).

8. Section 8 of the NVRA also requires that the Commonwealth "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

9. Although Section 8 of the NVRA generally restricts states from removing ineligible registrants from the voting rolls within 90 days of a primary or general election, that restriction expressly does *not* apply to the removal of registrants who have died. *See* 52 U.S.C. §

20507(c)(2)(B)(i); *accord* 25 PA. CONS. STAT. § 1901(b)(4)(i).  Registrants who have died may be removed at *any time*.

10.    The Secretary of the Commonwealth is the chief election official of Pennsylvania and is responsible for coordination of the Commonwealth's responsibilities under the NVRA.  52 U.S.C. § 20509.

11.    Congress intended for the chief election official to be "responsible for implementing the state's function under the [NVRA]."  S. REP. NO. 103-6, at 39 (1993).

12.    Although a state may assign certain tasks associated with the voting registration process to different officials in the state, the chief election official remains responsible at all times – pursuant to *federal* law – for coordinating and implementing the NVRA's myriad legal mandates. Neither the state nor its chief election official may delegate to a local official or body (such as, in the case of Pennsylvania, a county registration commission) the NVRA's requirement to conduct a reasonable program to remove deceased registrants from the voter rolls and thereby allow the chief election official to avoid her legal responsibilities under the NVRA if such program is not reasonably conducted.  The buck stops with the chief election official – the Secretary of the Commonwealth.

5

13.     Defendant's responsibility for coordinating with both state agencies and county registration commissions to ensure the removal of deceased electors from the voting rolls is a core component of her NVRA statutory coordination obligation.  It is also mandated by the federal Help America Vote Act. 52 U.S.C. § 21083(a)(2)(A)(ii)(II).

## Pennsylvania's Process for Removing Deceased Registrants

14.     Pennsylvania law requires county registration commissions, which are established pursuant to 25 PA. CONS. STAT. § 1203(a), to cancel the registration of a registered elector reported dead by the Department of Health.  *Id.* § 1505(a).  Cancellation is effectuated by removing the deceased registrant's name from the list of eligible voters on the SURE system.  *Id.* § 1222(c)(4).

15.     Pennsylvania law further directs the Department of Health to send the name and residential address of any deceased individual over age 18 to the respective county registration commission within 60 days of receiving notice of such individual's death.  *Id.* § 1505(a).

16.     In addition to identifying deceased registrants based on information received from the Department of Health, Pennsylvania law permits county registration commissions to utilize published newspaper

obituaries, letters testamentary or letters of administration issued by the office of the registrar of wills.  *Id.* § 1505(b).

**Pennsylvania's List Maintenance Procedures are Unreasonable**

17.    While Pennsylvania's prescribed methods for identifying dead may *help* identify persons who die *within* the state, they are not adequate to identify persons who die *outside* the state.

18.    Registrants who die *outside* of the state are not required to be reported to the Department of Health.  35 Pa. Cons. Stat. § 450.501 et seq.  In fact, there is no formal system or procedure in place under Pennsylvania law that would enable the Defendant to systematically learn of registrant deaths occurring outside of the state.

19.    Pennsylvania's list maintenance activities have also proven unreasonably inadequate to identify many registrants who have been deceased for a significant number of years.  Indeed, an analysis of the Commonwealth's voter rolls by Plaintiff's expert revealed that, as of October 7, 2020, at least 9,212 registrants have been dead for at least five years, at least 1,990 registrants have been dead for at least ten years, and at least 197 registrants have been dead for at least twenty years.

20.    While Pennsylvania has a list maintenance program in place under which it cancels the registrations of tens of thousands of deceased registrants each year, *see* **Exhibit 6** at p. 8, Plaintiff's expert analysis revealed that Pennsylvania still left the names of more than 21,000 dead individuals on the voter rolls less than a month before one of the most consequential general elections for federal officeholders in many years.

21.    Pennsylvania's practices for removing the names of deceased registrants from the list of eligible voters, overseen by the Defendant in her capacity as the state's chief election official, are unreasonable and inadequate to meet the obligations required by the NVRA.  Among the evidentiary bases for this allegation are (a) the presence of significant numbers of registrants on the rolls who have been deceased in excess of five years, and some for decades and (b) the presence of tens of thousands of deceased registrants on the rolls less than one month prior to a federal election.  Defendant's actions and inactions in this regard constitute a clear failure to conduct reasonable list maintenance under the NVRA.

**Thousands of Deceased Registrants Remain On the Voter Rolls**

22.    The Foundation's first step in analyzing the accuracy of Pennsylvania's voter rolls was to obtain the registration list containing

registrants who were classified as "ACTIVE" in the Commonwealth's SURE database as of September 2019.

23.    Registrants are classified as INACTIVE if they have failed to respond to a written notice from a county registration commission that is sent to registrants who have either (a) changed address, or (b) not voted within the prior five years.  25 PA. CONS. STAT. §§ 1901(b)(1), (b)(3), (c). All other voters are listed as ACTIVE.  *Id.*; *see also* **Exhibit 6** at p. 7.

24.    INACTIVE registrants on the Commonwealth's voter rolls are eligible to vote.  They simply must sign an affirmation attesting to their identity and address before voting.  25 PA. CONS. STAT. § 1901(d)(2)(i)(A).

25.    The Foundation hired a data analytics firm to identify any registered voters who are deceased.  That firm first cross-referenced the voter registration file provided by Defendant with commercial databases (e.g., credit reporting agencies and other databases), looking for evidence of commercial activity to help prevent the possibility of false positives.  If an individual was found to have had any recent financial activity, the firm went no further in trying to determine if the individual is deceased.

26.    The data analytics firm then took the list of registered voters with no recent commercial activity and sent the names, dates of birth,

and addresses for those voters to a commercial database vendor which has access to the Social Security Administration's databases. After matching Social Security Numbers to registered voters, the resulting list was examined against the Social Security Death Index ("SSDI") to identify the names of those registrants who are deceased. This process identified 12,192 deceased registrants, still in ACTIVE status, on Pennsylvania's voter rolls.

27.    To ensure it was using updated information, the Foundation then re-purchased from the Commonwealth a registration list containing the names of all registrants classified as "ACTIVE" as of May 3, 2020, in the SURE database. The Foundation compared the names of the 12,192 deceased registrants who had been identified by its data analytics firm using the September 2019 voter registration report to the names still on the voter rolls as of May 2020. This comparison revealed that more than 9,300 deceased registrants remained on the rolls as of May 3, 2020.

28.    The methodology used to determine the names of these 9,300 deceased registrants was necessarily conservative and under-inclusive because it focused only on those names of deceased registrants who had remained in ACTIVE status on the voter rolls between September 2019

and May 3, 2020, and it did not even attempt to identify registered voters who may have died in the interim.

29.   In a letter dated May 26, 2020, the Foundation alerted Defendant to its findings from its analysis of the Commonwealth's voter rolls, including the fact that approximately 9,300 ACTIVE registrants were matched to the SSDI.   The Foundation asked to meet with Defendant so that its methodology could be discussed and a remedial solution could be reached. *See* **Exhibit 1**.

30.   Seven weeks later, Defendant's representative responded to the Foundation via email in which it thanked the Foundation for the information and asked the Foundation for the voter ID numbers (from the SURE system) of these registrants so that it could investigate the situation.   Defendant asked only for voter ID numbers; she did not ask for the city or county of residence, nor did she request the middle initials for each registrant.   Instead, even when offered this additional data, Defendant declined it. Defendant's representative told the Foundation that Defendant only needed a unique voter ID number to reliably retrieve the associated records. Defendant was certainly correct; obtaining the

voter ID numbers was all that was required for Defendant to identify the dead registrants, and no further information would be necessary.

31.   The Foundation provided all the requested data to Defendant on July 17, 2020.

32.   After receiving the additional proof indicating that the Commonwealth's voter rolls are woefully noncompliant with federal law requirements, Defendant stopped communicating further with the Foundation.

33.   On September 18, 2020, the Foundation sent a formal Notice Letter to Defendant, with a copy to her legal counsel, notifying them that the Commonwealth was in violation of the NVRA.  The letter recounted the Foundation's findings and its efforts to communicate with them about bringing the Commonwealth into compliance. *See* **Exhibit 2**, hereinafter "Notice Letter."

34.   The Notice Letter was sent to Defendant via U.S. Postal Service (USPS) certified mail with return receipt requested.  The Foundation received confirmation that the Notice Letter was delivered and signed for on September 25, 2020. *See* **Exhibit 3**, USPS certified mail delivery confirmation.

**Number of Names of Deceased Registrants Remaining on the
Voter Rolls On Eve of Election Remains Extremely High**

35.   On September 21, 2020, while waiting for Defendant to
respond to the Notice Letter, the Foundation purchased *another* copy of
Pennsylvania's voter rolls to determine whether any further effort had
been made to conduct list maintenance based on registrant deaths since
the Foundation's previous analysis in May 2020.   In doing so, the
Foundation also sought to bring to Defendant's attention the most up-to-
date data, as well as data that would most accurately (and closely in time)
inform the production of the pollbooks before the November 2020 general
election.

36.   This time, however, the Foundation researched the entire
statewide voter roll, including both ACTIVE and INACTIVE registrants,
in an effort to learn whether the Commonwealth was removing deceased
registrants in response to the Foundation's data, regardless of the
registrants' classification (i.e., as active or inactive) in the SURE system
database.

37.   The Foundation's updated analysis of the voter roll confirmed
that a very substantial number of INACTIVE registrants were deceased,

in addition to the deceased ACTIVE registrants.  In fact, as of September 21, 2020, there were 21,248 total deceased registrants (both ACTIVE and INACTIVE) on the rolls.  *See* **Exhibit 4**, **filed under seal**.

38.    On October 7, 2020, approximately one week before filing this lawsuit, the Foundation obtained *one more copy* of Pennsylvania's voter roll in an effort to ensure that the numbers it cited in the case were the very latest available.  That latest list was then once again provided to the Foundation's data processing firm, which compared the names of the 21,248 deceased registrants who had been identified by its data analytics firm using the September 21, 2020 voter registration report to the names still on the voter rolls as of October 7, 2020.  The result: the number of deceased registrants on the voting rolls barely budged – it remained at more than 21,200 (specifically, 21,206).[1]  *See* **Exhibit 5, filed under**

---

[1] Although extremely rare, the SSDI does occasionally include the names of individuals who have not died.  The data analytics firm hired by Plaintiff seeks to guard against this by further comparing the names of individuals on the SSDI to obituaries and other publicly available sources of deceased individuals (e.g., credit reporting agencies).  Anyone with commercial activity following a reported date of death is eliminated as well.  The only way a false positive could occur, therefore, is if the SSDI erroneously listed an individual as deceased, that individual had no commercial activity whatsoever following the reported date of death, and yet the individual was sufficiently civic minded to register to vote despite effectively living "off the grid."  That may not be an impossible scenario,

**seal**.  The biggest concern, of course, is that these voter rolls bloated with tens of thousands of deceased registrants were present less than a month before one of the most consequential federal elections ever.

39.    As was true of the Foundation's analysis in May 2020 of the names of ACTIVE deceased registrants on the voter rolls (described in ¶ 27 above), the methodology used to determine the names of these 21,206 deceased registrants in October 2020 was necessarily conservative and under-inclusive because it focused only on names of deceased registrants who had remained on the voter rolls – whether on ACTIVE or INACTIVE status – between September 21, 2020 and October 7, 2020.  It did not attempt to identify registered voters who may have died in the interim.

40.    Of the 21,206 dead individuals on the Commonwealth's voting rolls as of October 7, 2020, approximately 92% died before October 2019. *Nearly 10% died more than a decade ago.*  And just under 1% died *at least two decades ago.*

41.    Equally troubling, of the approximately 9,300 names of dead individuals listed as ACTIVE registrants on the voter rolls at the time

---

but it is pretty close to it.  Even so, in an abundance of caution, Plaintiff filed the names of deceased registrants from its report under seal.

Plaintiff first provided its list of deceased registrants to Defendant on May 26, 2020, 4,139 of those deceased registrants remained on the list of registered voters when the Foundation updated its analysis of the state's voter rolls in October 2020. Worse still, those names remained on the voter rolls for at least a year (and in most cases much more) after their death, for nearly four months after Plaintiff had given the names (and all the underlying data demonstrating their deaths) to Defendant, and less than a month before one of the most consequential federal elections in many years.

42.    Of the 4,139 names of deceased registrants whose names were still on the list of registered voters in September 2019 (following their deaths) and continued to remain on the voter rolls as of October 2020, 2,862 were registered as ACTIVE status. Meanwhile, 1,277 were listed as INACTIVE status. This, too, reflects unreasonable list maintenance activities on Defendant's part under the NVRA because the names of most or all of those deceased registrants should have been altogether removed from the voter rolls – not simply changed to INACTIVE status.

43.    Upon information and belief, it appears that Defendant may be utilizing – at least at times – the procedures designed for removing

the names of ineligible voters by reason of a *change in residence*, *see* 52 U.S.C. § 20507(d) and 25 PA. CONS. STAT. § 1901, as its procedure for removing the names of *deceased* registrants.  The NVRA requires more, and the failure to implement a reasonable list maintenance program that detects dead registrants apart from a program designed to detect changes in residence offends the NVRA's dual obligations.  If a state has credible information that a registrant is deceased, merely sending a notice to his or her last known address and waiting at least two full election cycles before he or she is removed from the voter rolls is neither required by the NVRA nor reasonable.  Defendant's significant delays in removing dead registrants violates the NVRA.

44.    Pennsylvania law requires that, "at least once per year," each registration commission must undertake a "voter removal program" to remove from the list of eligible voters individuals who changed residence to a location outside the county in which they are registered.  25 PA. CONS. STAT. §§ 1901(b)(4).  Any reasonable list maintenance program designed to remove the names of deceased registrants from the voter rolls must be conducted at least as often, if not much more so.  The Commonwealth's failure to do so contravenes the NVRA.

45.   Having a process in place that systematically removes deceased registrants is not just a good idea, it is the law. 52 U.S.C. § 20507(a)(4)(A). For over 20,000 deceased registrants to be on the voter rolls just weeks before a national election demonstrates emphatically that the Commonwealth has failed to reasonably implement and/or maintain a systematic list maintenance program that complies with federal law requiring deceased electors to be removed from the voter rolls.

46.   Nor can Defendant justify her failures by pointing to a state statute or practice delegating to county registration commissions the responsibility for removing deceased registrants from the voter rolls. Under the NVRA, it is the obligation of *Defendant* to conduct a reasonable program to remove the names of deceased registrants from the state's list of eligible voters.  Defendant has failed to fulfill her legal requirement in this regard, and she cannot avoid her culpability by citing to state law or procedures that might allegedly complicate her task or seek to thrust the duties assigned to her under federal law to one or more third parties.

47.   Defendant's deficiencies in maintaining a reasonable list maintenance program are not new.  In December 2019, the Pennsylvania Department of the Auditor General audited the Commonwealth's SURE

database and concluded that the Department of State failed to cancel the registrations of 2,094 registrants for whom it had received death notices from the Department of Health (p. 35), and that "tens of thousands" of records in the SURE system were inaccurate, including 2,230 that identified the registrant's date of birth as being *after* his/her date of registration. *See* Performance Audit Report – Penn. Dep't of State – Statewide Uniform Registry of Electors (December 2019), *available at* https://www.paauditor.gov/Media/Default/Reports/Department%20of%20State_SURE%20Audit%20Report%2012-19-19.pdf (last accessed Oct. 22, 2020).

48.   The NVRA's requirement that states make a reasonable effort to remove the names of deceased registrants from their list of eligible voters also necessitates that the state consider and act upon credible data from sources outside its normal procedures, including but not limited to the SSDI-refined information provided by the Foundation.  Disregarding credible data just because it does not fit within the state's own statutory framework or policy directives is the antithesis of reasonable and violates the NVRA.

### Numerous Registrants Have Voter Registration Dates
### *After* the Date of their Death

49.     Remarkably, Plaintiff's analysis of the Commonwealth's voter rolls (as of October 2020) revealed at least 114 individuals who registered to vote AFTER the date of their death.  Without further inquiry, there is no way to know for certain whether these post-death registrations are the result of identity theft, data input error, or some other reason.  But this kind of issue would not arise if the Commonwealth cross-referenced new registrations to the SSDI.  With such a high prevalence of post-death registrations, it is only reasonable to incorporate (and unreasonable to not incorporate) SSDI cross-references in the registration process.

### Deceased Registrants Appear to Be Voting in Pennsylvania

50.     Although Plaintiff is not required to prove any voter fraud in order to recover on its claim in this lawsuit, Defendant's deficiencies in meeting her legal obligations under the NVRA are not merely theoretical. Indeed, Plaintiff's analysis revealed there were at least 135 votes in the November 2016 general election by (or at least in the name of) individuals who died prior to September 1, 2016.  Plaintiff's analysis revealed 81 such

votes by the dead in the November 2018 election by (or at least in the name of) individuals who passed away prior to September 1, 2018.

**Plaintiff's Statutory Right to Bring this Action Under the NVRA**

51.   Because Defendant, in clear contravention of the NVRA, has been unable or unwilling to remove from the Commonwealth's voting rolls many thousands of individuals whom are known to be dead – including based on information provided by the Foundation – and such violation has continued within 30 days prior to a Federal election, the Foundation is entitled to bring this civil action pursuant to Section 11(b)(3) of the NVRA, 52 U.S.C. § 20510(b)(3).

52.   The Foundation is alternatively entitled to bring this civil action pursuant to Section 11(b)(2) of the NVRA, 52 U.S.C. § 20510(b)(2), because, following the receipt of the Foundation's formal Notice Letter, the Defendant failed to timely correct (or correct at all, for that matter) the Commonwealth's NVRA violations by removing the known dead registrants from its voting rolls within twenty days where the violation has continued to occur within 120 days of a Federal election.

## COUNT I

## Violation of the NVRA: Failure to Conduct List Maintenance

53.     The Foundation re-alleges paragraphs 1 through 52 as if fully stated herein.

54.     Defendant has failed to make reasonable efforts to conduct voter list maintenance programs that ensure that the deceased do not remain registered to vote, in violation of Section 8 of NVRA, 52 U.S.C. § 20507.

55.     Defendant's list maintenance procedures have clearly failed to remove many thousands of long-deceased registrants from the state's list of eligible voters.  Whatever efforts are being made by Defendant, they are unreasonable within the meaning of the NVRA because they are not working.  The proverbial proof is in the pudding.  The NVRA does not simply require a percentage or portion of dead registrants to be removed, it requires a program that actually reasonably detects dead registrants and removes them. When 21,000 deceased registrants remain on the voter rolls, the list maintenance program is not only unreasonable, it is failing.

56.   The Foundation has suffered an irreparable injury as a direct result of Defendant's violation of Section 8 of the NVRA, 52 U.S.C. § 20507. Defendant's failure to comply with the NVRA has aggrieved and continues to aggrieve Plaintiff by impairing its essential and core mission of fostering compliance with federal election laws and promoting election integrity. Defendant's failure to comply with the NVRA has caused and continues to cause Plaintiff pecuniary injury and frustrates the organization's purposes.

57.   Plaintiff will continue to be injured by Defendant's violations of Section 8 of the NVRA because confidence in the legitimacy of elections in the "swing state" of Pennsylvania will be severely undermined unless and until Defendant is enjoined from continuing to violate the law.

58.   The Foundation has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for entry of a judgment:

1.   Declaring Defendant to be in violation of Section 8 of the NVRA;

2.     Ordering Defendant to immediately investigate the deceased registrations identified by Plaintiff and remove confirmed deceased registrants from the voter rolls;

3.     Ordering Defendant to implement and follow a reasonable and effective list maintenance program to cure the violations identified herein and bring the Commonwealth's voter rolls into compliance with Section 8 of the NVRA;

4.     Ordering Defendant to incorporate the SSDI into its standard list maintenance program to help identify the names of dead registrants on the voter rolls;

5.     Ordering Defendant to review the Foundation's data and implement a procedure to flag likely deceased registrant records to ensure that a ballot is not fraudulently cast in their name;

6.     Ordering the Defendant to cross-reference the names of new registrants against the SSDI;

7.     Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

8.    Granting Plaintiff such further relief as this Court deems just

and proper, including all other injunctive relief available to

the Court.

Respectfully submitted,

For the Plaintiff:

*/s/ Linda A. Kerns*
Law Offices of Linda A. Kerns, L.L.C.
1420 Locust St., Ste. 200
Philadelphia, PA 19102
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

Sue Becker (MO 64721)*
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
sbecker@publicinterestlegal.org

John Eastman (CA 193726)*
Center for Constitutional Jurisprudence
c/o Chapman Univ. Fowler Sch. of Law
One University Dr.
Orange, CA 92866
Tel: (877) 855-3330
Fax: (316) 264-1518
jeastman@chapman.edu

Bradley J. Schlozman (KS 17621)*
HINKLE LAW FIRM
1617 N. Waterfront Parkway, Ste. 400
Wichita, KS  67206-6639
Tel: (316) 267-2000
Fax: (316) 264-1518
bschlozman@hinklaw.com

*Admitted Pro Hac Vice