# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | **NO. 1:20-cv-01905** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE JONES** |
| **v.** | : | |
| | : | |
| **KATHY BOOCKVAR, in her official capacity,** | : | **ELECTRONICALLY FILED** |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## INTRODUCTION

Plaintiff Public Interest Legal Foundation ("PILF") seeks in this action to compel the Commonwealth to substitute its preferred method of identifying deceased voters for the procedure specifically adopted by the General Assembly pursuant to the directive in the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(a)(4)(A).  Notwithstanding a prior amendment, PILF fails to state a claim upon which relief can be granted.  *First*, PILF lacks standing because it alleges only a generalized grievance against a statutory procedure that it views as inadequate.  This is not a concrete and particularized injury cognizable under the NVRA and is not traceable to the Secretary of the Commonwealth or redressable by a decision in this case.  *Second*, PILF fails to allege a violation of the NVRA.  It asserts no facts that plausibly suggest that the Commonwealth's list maintenance

program is unreasonable and, therefore, violative of the NVRA.  *Third*, because the list maintenance obligation at issue is delegated by statute to the counties in Pennsylvania and neither the General Assembly nor the counties are joined as defendants, the relief that PILF seeks—an order requiring implementation of new procedures to purge the names of deceased voters—is not possible.  As detailed below, PILF fails to state a claim upon which relief can be granted and, therefore, its First Amended Complaint should be dismissed.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 15, 2020, PILF filed a Complaint for Declaratory and Injunctive Relief alleging a single claim for relief under the NVRA and naming the Secretary of the Commonwealth Kathy Boockvar as the only defendant.  (ECF No. 1.)  PILF also filed a motion for preliminary injunction seeking an order striking the names of 21,206 allegedly deceased registrants from the voter rolls prior to the November 3, 2020 general election.  (ECF No. 4.).  PILF's allegations are admittedly speculative.  To that end, PILF conceded, in attachments to the First Amended Complaint and in earlier filings, that the voters sought to be removed are "potentially deceased," First Am. Compl., Ex. 1 at p.2; *id.*, Ex. 2 at p.2, "likely dead," Compl. (ECF No. 1) ¶ 26, "apparently dead," Br. in Supp. of Mot. for Prelim. Inj. (ECF No. 5) at 2, or "likely deceased," *id.* at 6, 18, 19.

The Court scheduled a hearing and argument on PILF's motion for preliminary injunction for October 19, 2020.  (ECF No. 12.)  Following argument,

2

the Court decided that a hearing was unnecessary and issued an Order adjourning

the proceeding and denying PILF's motion for preliminary injunction.  (ECF No.

27.)  On October 20, 2020, the Court issued a Memorandum detailing the

reasoning for denying the motion, explaining that "we cannot find that the many

procedures currently in place are unreasonable."  *Public Interest Legal Found. v.*

*Boockvar*, --- F.3d ---, 2020 WL 6144618, *3 (M.D. Pa. Oct. 20, 2020).[1]

On November 5, 2020, PILF filed a First Amended Complaint.  (ECF No.

30.)  Like the original Complaint, the First Amended Complaint includes a single

claim for relief alleging that Pennsylvania's statutory procedure for removing the

names of deceased voters is unreasonable and therefore violates the NVRA.  That

procedure, codified at 25 Pa. C.S.A. § 1505, directs "commission[s]"—defined as

the county commissioners of each county, 25 Pa. C.S.A. § 1203(a)—to "cancel the

registration of a registered elector reported dead by the Department of Health," 25

Pa. C.S.A. § 1505(a).  The Pennsylvania Voter Registration Act further requires

that "[t]he Department of Health shall, within 60 days of receiving notice of the

death of an individual 18 years of age or older, send the name and address of

residence of that individual to a commission" and "[t]he commission shall

promptly update information contained in its registration records."  *Id.*  In addition

to the required notice from the Department of Health, "[a] commission may also

---

[1]  Pursuant to Middle District Local Rule 7.8(a), copies of the unpublished decisions cited herein are reproduced in the attached appendix.

utilize published newspaper obituaries, letters testamentary or letters of administration issued by the office of the registrar of wills to cancel and remove the registration of an elector, provided that such removals are uniform, nondiscriminatory and in compliance with the Voting Rights Act of 1965." 25 Pa. C.S.A. § 1505(b).

PILF alleges that these statutory procedures are not adequate to meet the obligations required by the NVRA. First Am. Compl. ¶ 121. It claims to have retained an "expert" who conducted an analysis of the Commonwealth's voter rolls and identified registrants who are dead and whose names should have been deleted. *Id.* ¶ 19. PILF does not identify its "expert" or disclose the "expert" analysis, but merely alleges in general terms that "a data analytics firm" "cross-referenced" the Commonwealth's voter registration file "with commercial databases . . . . looking for evidence of commercial activity to help prevent the possibility of false positives." *Id.* ¶ 25. The "data analytics firm" then sent the names of selected voters "with no recent commercial activity" "to a commercial database vendor which has access to the Social Security Administration's databases" and examined the resulting list "against the Social Security Death Index ('SSDI') to identify the names of those registrants who are deceased." *Id.* ¶ 26. PILF claims that this "analysis" uncovered that, even though the names of more than 90,000 deceased voters were removed from the voter rolls in both 2019 and 2020 pursuant to

Pennsylvania's list maintenance program,[2] more than 21,000 deceased voters allegedly remain on the rolls.  *Id.* ¶ 38.  PILF concedes that its analysis is not infallible, including because "the SSDI does occasionally include the names of individuals who have not died," First Am. Compl. at p.14 n.1, and because its analysis equated lack of specific types of commercial activity with death.  *Id.* PILF also appears to concede that voters suspected of having died may share the same name with living qualified electors and that this may lead to false positives. *Id.* ¶ 50.  And, as noted above, PILF concedes that its analysis is speculative and identifies persons who are "potentially deceased," *id.* at Exs. 1, 2.

Relying on its own analysis, PILF alleges that the Commonwealth's statutory list maintenance procedures fail to make reasonable efforts to ensure that the names of deceased persons are purged from the voter rolls as required by 52 U.S.C. § 20507.  It seeks injunctive relief requiring the Commonwealth to

---

[2]   The Department of State's Report to the General Assembly identifies the number of voter registrations cancelled in 2018 as 79,178 active voters and 12,246 inactive voters.  The data is on page 8 of the report which is available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/Annual%20Reports%20on%20Voter%20Registration/2018%20ANNUAL%20REPORT.pdf (last visited December 3, 2020).  The 2019 report identifies the number of voter registrations cancelled as 83,831 active voters and 11,839 inactive voters.  The data is on page 8 of the report which is available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/Annual%20Reports%20on%20Voter%20Registration/2019%20Annual%20Report.pdf (last visited December 3, 2020).  This Court may properly take judicial notice of these government reports in relation to Secretary Boockvar's motion to dismiss under Rule 12(b)(6).  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"implement and follow a reasonable and effective list maintenance program to . . . bring the Commonwealth's voter rolls into compliance with" the NVRA, specifically by requiring the Secretary of the Commonwealth "to incorporate the SSDI into [the Commonwealth's] standard list maintenance program to help identify the names of dead registrants on the voter rolls." *Id.* at First Am. Compl., Prayer for Relief, ¶¶ 3-4.

## QUESTIONS PRESENTED

I.    Whether PILF has Article III standing to pursue a claim against the Secretary of the Commonwealth under the NVRA challenging the reasonableness of statutory list maintenance procedures enacted by the Pennsylvania General Assembly.
Suggested Answer:  No.

II.   Whether the First Amended Complaint fails to state a plausible claim for relief under the NVRA where it does not allege any facts suggesting that the statutory list maintenance program enacted by the Pennsylvania General Assembly to identify and remove deceased registrants is in any way unreasonable.
Suggested Answer:  Yes.

III.  Whether the injunctive relief sought by PILF is impossible because list maintenance in the Commonwealth of Pennsylvania is delegated by statute to the counties and none of those counties are joined as defendants.
Suggested Answer:  Yes.

## ARGUMENT

## I.    PILF Lacks Standing To Bring a Claim Under the NVRA Challenging the Reasonableness of Pennsylvania's Statutory List Maintenance Programs.

"Article III standing is a prerequisite for the federal courts to decide the merits of a suit." *In re Schering Plough Corp. Intron/Temodar Consumer Class*

6

*Action*, 678 F.3d 235, 246 (3d Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998)).  To establish Article III standing, an injury must be (1) concrete, particularized and actual or imminent, (2) fairly traceable to the challenged action, and (3) redressable by a favorable ruling.  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013) (citations and internal quotation marks omitted).  PILF has not satisfied any of these required elements.

PILF fails to allege any concrete or particularized injury resulting from Pennsylvania's statutory list maintenance program.  PILF proposes that "confidence in the legitimacy of elections" in Pennsylvania "will be severely undermined" unless the statutory procedures are modified, First Am. Compl. ¶ 57, but this is a mere generalized grievance that does not confer standing.  *See*, *e.g.*, *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 482-83 (2009) ("This Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law.") (citation and internal quotation marks omitted); *Lance v. Coffman,* 549 U.S. 437, 442 (2007) (per curiam) (alleging that "the law . . . has not been followed" is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and

7

every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Bognet v. Secretary Commonwealth of Pa.*, --- F.3d ---, 2020 WL 6686120, at *6 (3d Cir. Nov. 13, 2020) ("Federal courts are not venues for plaintiffs to assert a bare right to have the Government act in accordance with law. . . .  Courts routinely dismiss such cases as generalized grievances that cannot support standing.") (citations and internal punctuation marks omitted), *petition for certiorari docketed*, No. 20-740 (Nov. 27, 2020); *Goode v. City of Philadelphia,* 539 F.3d 311, 322 (3d Cir. 2008) (failure to allege injury "beyond the generalized injury that all persons in [city] suffered" compels dismissal for lack of standing).

PILF alleges in the alternative that the Secretary's purported failure to comply with the NVRA caused it to suffer "pecuniary injury" and "frustrates [its] purposes."  First Am. Compl. ¶ 56.  These allegations are also insufficient to support standing.  Neither an organization's mission nor expenditures associated with that mission or with monitoring compliance with the law confer standing.  *See Clapper*, 568 U.S. at 402 ("respondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *Sierra Club v. Mor*ton, 405 U.S. 727 (1972) ("mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the

8

organization 'adversely affected' or 'aggrieved'" for purposes of Article III); *Ass'n of Comm'y Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999) (holding that "general allegations of activities related to monitoring the implementation of the NVRA fail to confer standing on ACORN to bring this lawsuit on its own behalf"); *Fair Housing Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78 & n.5 (3d Cir. 1998) (holding that investigation to determine compliance with law conducted as part of organization's day-to-day activities not sufficient to confer standing).

Nor can PILF satisfy the second or third requirements for standing. The injury it alleges—a purportedly inadequate statutory voter removal program—is neither fairly traceable to Secretary Boockvar nor redressable by a favorable judicial ruling in this case. Pennsylvania's list maintenance programs were established by the General Assembly and responsibility for their implementation is delegated to the counties. 25 Pa. C.S.A. §§ 1203(b), 1505(a), 1901(a), (b). PILF has not alleged, and cannot allege, that Secretary Boockvar possesses authority to repeal or rewrite these statutory provisions. PILF thus fails to establish the traceability and redressability elements necessary for Article III standing. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) ("[T]he 'case or controversy' limitation of Article III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant,

and not injury that results from the independent action of some third party not before the court.").

The First Amended Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of standing.

## II.   __PILF Fails To Allege a Plausible Claim for Relief Under the NVRA.__

To avoid dismissal under Rule 12(b)(6), a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.  PILF falls far short of satisfying this burden.  It does not, and cannot, allege facts that plausibly suggest that the Commonwealth's list maintenance program is unreasonable.  Therefore PILF fails to allege a cognizable claim for relief under the NVRA.

Pursuant to the NVRA, election officials are required to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant."  52 U.S.C. § 20507(a)(4)(A).  To fulfill this obligation, the Pennsylvania General Assembly established comprehensive list maintenance programs to remove the

10

names of voters who have died.  *See* 25 Pa. C.S.A. § 1901 *et seq*.  With respect to

voters who are deceased, the Pennsylvania Voter Registration Act specifically

directs that "[a]n elector's registration shall not be canceled except" as provided in

"section 1505."  25 Pa. C.S.A. § 1901(a)(2).  That section provides that

commissions "shall cancel the registration of a registered elector reported dead by

the Department of Health."  25 Pa. C.S.A. § 1505(a).  Commissions are also

authorized to consider "published newspaper obituaries, letters testamentary or

letters of administration issued by the office of the registrar of wills to cancel and

remove the registration of an elector, provided that such removals are uniform,

nondiscriminatory and in compliance with the Voting Rights Act of 1965 . . . ."  25

Pa. C.S.A. § 1505(b).  It is presumed that, in enacting this statute, the General

Assembly did not intend a result that is unreasonable.  1 Pa. C.S.A. § 1922(1).[3]

---

[3]   Additionally, counties in Pennsylvania are statutorily permitted to send a
notice to any registered elector who has not voted or appeared to vote during the
five-year period before the date of the notice. 25 Pa. C.S.A. § 1901(b)(3).  Voters
who fail to respond to the notice are designated "inactive" and their registrations
are canceled if they fail to vote during the period beginning on the date of the
notice and ending on the day after the second general election for federal office
that occurs after the date of the notice (*i.e.* the two year period after the notice is
sent). 25 Pa. C.S. § 1901(c), (d)(1)(ii)(B).  Voters who fail to respond are required
to make an affirmation of their eligibility to voter or confirmation of their address
before they are permitted to vote in any election.  25 Pa. C.S. § 1901(d)(2)(i)(A).
In addition to the list maintenance programs, the Pennsylvania Voter Registration
Act includes safeguards to ensure that only qualified electors cast ballots, including
processes for verifying identity of in-person and mail-in voters, 25 P.S. § 3050(a.3)
(verifying identification of in-person voters); 25 P.S. § 3150.12b(a) (verifying
identification for mail-in voters), and imposition of criminal penalties on any
person who votes a ballot not issued to himself, 25 P.S. § 3553.

PILF concedes that there is a statutory procedure in Pennsylvania for removing the names of deceased voters, First Am. Compl. ¶¶ 14-16, and that deceased voters have in fact been removed from the voter rolls pursuant to the statutory procedure, *id.* ¶ 17.  The First Amended Complaint is instead based on PILF's view that the Commonwealth should employ a different methodology.  *Id.* ¶¶ 17, 19.  Specifically, PILF proposes that the Commonwealth should utilize the Social Security Death Index ("SSDI") "to help identify the names of dead registrants on the voter rolls."  *Id.* at Prayer for Relief, ¶¶ 2-6.  Even if PILF or this Court had authority to direct how a state conducts its elections—and they do not, *see Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) ("district court exceeded its authority by rewriting Ohio [election] law with its injunction"); *Esshaki v. Whitmer*, 813 F. App'x 170, 172 (6th Cir. 2020) ("federal courts have no authority to dictate to the States precisely how they should conduct their elections")—PILF's claim is not viable under the NVRA.  The NVRA requires only that states "conduct a general program that makes a reasonable effort to remove" the names of voters who have died.  52 U.S.C. § 20507(a)(4)(A).  There is no requirement that states exhaust every conceivable methodology or utilize any particular database or procedure.  PILF's demand for relief is simply not cognizable under the NVRA.

Further, as this Court recognized in denying PILF's motion for preliminary injunction, PILF does not allege any facts that plausibly suggest that the

12

Commonwealth's list maintenance program is unreasonable. *Public Interest Legal Found. v. Boockvar*, --- F.3d ---, 2020 WL 6144618, *3 (M.D. Pa. Oct. 20, 2020). PILF posits that the program is not adequate to identify persons who die outside of the state because such deaths are not reported to the Department of Health, First Am. Compl. ¶¶ 17-18, but this argument ignores 26 Pa. C.S.A. § 1505(b) which authorizes counties to also utilize newspaper obituaries, letters testamentary and letters of administration to identify voters who have died. The First Amended Complaint does not allege any facts suggesting that these additional data sources are insufficient. PILF alleges in the alternative that the Commonwealth's list maintenance program is inadequate because it purportedly failed to identify electors who have been dead for many years. First Am. Compl. ¶ 19. Even if PILF were able to allege specific facts supporting its theory—and it did not—this would not suggest that the Commonwealth's program is unreasonable. As this Court recognized, the number of allegedly deceased voters PILF claims to have identified through its analysis is not "a hallmark of an unreasonable list maintenance program." *Public Interest Legal Found.,* 2020 WL 6144618, at *3. The NVRA requires reasonableness, not perfection. *Id.* at * 3.

    In denying PILF's request for preliminary injunctive relief, this Court explained that "we cannot find that the many procedures currently in place are unreasonable." *Id*. at *3. The First Amended Complaint adds nothing that might support a different outcome. Because Pennsylvania has a reasonable statutory

program to remove deceased registrants, PILF fails to state a plausible claim for relief under the NVRA.

### III.    PILF Fails To State a Plausible Claim for Injunctive Relief.

Even if PILF were able to allege a plausible violation of the NVRA, the specific relief that it seeks—an order directing the Secretary to incorporate the SSDI and other data sources into the Commonwealth's list maintenance programs, First Am. Compl., Prayer for Relief ¶¶ 2-6—is not available as a matter of law. The Pennsylvania General Assembly delegated list maintenance responsibilities to the "commissions," which are defined as the county commissioners of each county, 25 Pa. C.S.A. § 1203(a), (b)(1), and therefore only the counties are statutorily authorized to cancel voter registrations, 25 Pa. C.S.A. § 1505(a); 25 Pa. C.S.A. § 1901(a), (b).  Further, the Pennsylvania Voter Registration Act directs that "[an]n elector's registration *shall not be canceled except as follows*: . . . [u]pon the death of the elector *under section 1505* (relating to death of a registrant)."  25 Pa. C.S.A. § 1901(a)(2) (emphasis added).  Because Secretary Boockvar is without authority to repeal or rewrite these statutory provisions, the injunctive relief that PILF seeks is impossible.  For this alternate reason, PILF fails to allege a plausible claim for relief under the NVRA.

14

## **<u>CONCLUSION</u>**

For the reasons above, PILF lacks standing and fails to allege a plausible claim for relief under the NVRA and therefore its First Amended Complaint should be dismissed.

<div style="margin-left: 40%">

Respectfully submitted,

<u>/s/ Donna A. Walsh</u>
Daniel T. Brier
Donna A. Walsh
Suzanne P. Conaboy

</div>

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:  December 3, 2020

15

## <u>CERTIFICATE OF SERVICE</u>

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion To Dismiss First Amended Complaint was served upon the following counsel of record via the Court's ECF system on this 3rd day of December 2020:

Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, L.L.C.
1420 Locust St., Ste. 200
Philadelphia, PA 19102

Sue Becker, Esquire
Public Interest Legal Foundation
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204

John Eastman, Esquire
Center for Constitutional Jurisprudence
c/o Chapman University Fowler School of Law
One University Drive
Orange, CA 92866

Bradley J. Scholzman, Esquire
Hinkle Law Firm
1617 N. Waterfront Parkway, Ste. 400
Witchita, KS 67206-6639

/s/ Donna A. Walsh