# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| vs. | ) ) | Case No. 1:20-cv-01905 |
| | ) | Chief Judge Jones |
| KATHY BOOCKVAR, Secretary of the Commonwealth of Pennsylvania, in her official capacity, | ) ) ) ) | |
| *Defendant*. | ) ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Public Interest Legal Foundation ("PILF") submits this response to Defendant's motion to dismiss the First Amended Complaint ("FAC") and memorandum in support thereof (ECF Nos. 31-32).

## INTRODUCTION

Defendant predicates her motion on three theories: (i) PILF has no standing; (ii) PILF failed to allege any specific facts suggesting that the Commonwealth's list maintenance program for removing the names of ineligible individuals from the voter rolls is unreasonable and thereby violative of the National Voter Registration Act ("NVRA"); and (iii) the

state legislature has, via statute, delegated list maintenance obligations to *individual counties*, thus rendering the Court powerless to order the Defendant to modify any of the Commonwealth's procedures in this area.

None of these arguments has merit, particularly at this early stage of the proceeding. Not only is the Plaintiff's legal standing to bring this action well established under the case law, but the FAC provides highly detailed allegations regarding the Defendant's deficiencies in removing deceased registrants from the voter rolls. While Pennsylvania has procedures for striking such names from the rolls, they are emphatically inadequate and unreasonable, as evidenced by (i) the presence of more than 21,000 dead individuals on the rolls less than a month before one of the most critical presidential elections in decades, (ii) the fact that thousands of those deceased registrants have remained on the rolls for many years – in some cases, decades – following their deaths, and (iii) Defendant's apparent passivity after PILF alerted her to the identities of the dead individuals bloating the rolls and the replicable methodology for eliminating the problem.

Defendant appears to labor under a fundamental misconception as to what the NVRA demands of both the Commonwealth itself and her

personally as its chief election official.  She suggests that the mere fact that the state has certain statutory procedures in place for removing the names of deceased individuals from the rolls *necessarily* makes those procedures reasonable and compliant with the NVRA.  That is simply not the law.  Plaintiff is fully prepared to prove, as it clearly alleged in the FAC, that Defendant's list maintenance program is unreasonable within the meaning of the NVRA.  For these reasons, as set forth in more detail below, Defendant's motion to dismiss should be denied.

## ARGUMENT

### I. – Plaintiff Has Standing to Maintain this Action

Although it is undisputed that Congress conferred a private right of action upon parties "aggrieved" by violations of the NVRA, 52 U.S.C. § 20510(b), Defendant insists that PILF has suffered no cognizable injury and therefore lacks standing.  Defendant's arguments in support of its position, however, rely on mischaracterizations of the FAC and seek to inject merits-determination issues into the standing inquiry.  Analyzed

under the proper standard and methodology, PILF's standing to pursue this action is beyond cavil.[1]

To establish Article III standing, a plaintiff must demonstrate (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "To avoid impermissibly assessing the merits, a court must assume for the purposes of a standing inquiry that a plaintiff has stated valid legal claims." *PILF v. Boockvar*, 370 F. Supp.3d 449, 455 (M.D. Pa. 2019) (quoting *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017)).

The injury-in-fact element of the standing test "is very generous to claimants." *Id.* (quoting *Cottrell*, 874 F.3d at 162). Indeed, the "plaintiff need only allege some specific, identifiable trifle of injury." *Id.* (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017)). Moreover, at the pleading stage of a case, a plaintiff

---

[1] Defendant is also being sued by a different non-profit organization for similar, yet less particularized, violations of the NVRA's list maintenance provisions. *See Judicial Watch v. Commonwealth of Pa.*, Case No. 1:20-cv-000708 (M.D. Pa 2020). Yet, Defendant curiously chose not to challenge the organization's standing in that case.

simply must meet the threshold legal standard for surviving a motion to dismiss, *viz.*, that it is *plausible* it has standing.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

In the wake of *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), and its progeny, it is also well settled that organizations like PILF have standing to sue in their own right for the time and resources they are forced to expend due to extra burdens imposed on them as a result of a defendant's conduct. An organization can demonstrate its injury by alleging that it had to divert significant resources to counteract the defendant's activities, thereby impairing its ability to provide its own activities, with the consequent drain on its resources.  *Id.*; *American Civil Rights Union v. Martinez-Rivera*, 166 F. Supp.3d 779, 788 (W.D. Tex. 2015).  As demonstrated below, this is particularly true in the context of an NVRA Section 8 claim like the one being asserted here.

The broadest of allegations of such an organizational injury will suffice at this phase of the proceeding.  *Martinez-Rivera*, 166 F. Supp.3d at 788 (describing the allegations of organizational injury the Supreme Court deemed adequate in *Havens*); *Common Cause / New York v.*

*Brehm*, 344 F. Supp.3d 542, 549 (S.D.N.Y. 2018) ("[A]s far as standing is concerned, there is no requirement that the Court evaluate the substantive merits of Plaintiff's purported reasons for diverting its resources, provided Plaintiff plausibly alleges the diversion occurred because of Defendant's alleged actions.").

Defendant emphasizes, and Plaintiff does not dispute, that neither generalized grievances nor standard, mission-based expenditures (e.g., monitoring a defendant's legal compliance) will support organizational standing. (Def.'s Mem. at 7-10). But these arguments are nothing more than straw men here because PILF's allegations go far beyond the type of undifferentiated objections to government policies or daily operational expenses that were deemed inadequate to trigger standing in the cases cited in Defendant's brief. To the contrary, PILF's injuries are concrete and particularized.

After PILF discovered (through significant and targeted monetary expenditures) the extraordinary surfeit of deceased registrants on the Commonwealth's voter rolls, it formally notified Defendant of her non-compliance with the NVRA (FAC ¶ 29); drafted follow-up correspondence at Defendant's request, which necessitated additional analysis by PILF

at additional cost (FAC ¶ 30); prepared and sent to Defendant a statutory notice letter when she ceased all communications with the organization (FAC ¶ 33); incurred still additional expenses to purchase and analyze the very latest voter registration rolls in an effort to identify the full scope of the problem that Defendant had by now refused to acknowledge (FAC ¶¶ 35-38), and then ultimately filed suit to remedy Defendant's intransigence and sustained unlawful conduct. All of these activities are directly traceable to, and were compelled by, Defendant's actions and inactions. Each also forced PILF to divert its limited resources – which it had hoped to deploy elsewhere – to ameliorating Defendant's refusal to follow the law and the negative impact it had on PILF's core mission (FAC ¶¶ 3, 5-6).

Courts have repeatedly found virtually identical facts sufficient to confer legal standing on public interest organizations seeking to enforce the NVRA's list maintenance requirements against other states and municipalities. *See Martinez-Rivera*, 166 F. Supp.3d at 789; *Judicial Watch v. King*, 993 F. Supp.2d 919, 925 (S.D. Ind. 2012) (organization with primary mission of conducting voter list verification program had standing to bring suit alleging non-compliance with list maintenance

obligations); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014) (organization had standing to sue over defendant's violations of NVRA's list maintenance obligations where those illegal acts impaired the organization's mission to carry out its projects by forcing it to divert scarce resources); *accord Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp.3d 1251, 1266-68 (N.D. Ga. 2019); *Brehm*, 344 F. Supp.3d at 548-49.  Indeed, district court decisions that *support* defendant's standing arguments are wanting.

Nor is the fact that Plaintiff's suit is consistent with its mission in any way fatal to its standing.  As the Seventh Circuit recently noted while addressing organizational standing under the NVRA, the Supreme Court in *Havens* specifically "found that the impairment of [an organization's] ability to do work *within* its core mission [is] enough to support standing." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 954 (7th Cir. 2019) (quoting *Havens*, 455 U.S. at 379) (emphasis in original).

As for the causation element of the standing test, "*Havens* teaches that courts must focus on those drains in resources that arise from the organization's needs to counteract the defendant's allegedly illegal practices, making that drain simply another manifestation of the injury

to the organization's noneconomic goals." *Id.* at 955-56 (quoting *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008)). The relevant inquiry is whether the organization's "activities were undertaken because of the challenged law, not whether they are voluntarily incurred or not." *Id.* at 956 (quoting *Browning*, 522 F.3d at 1166).

Defendant suggests that PILF cannot demonstrate either causation or redressability because the Commonwealth's list maintenance program is a product of statute that she is not empowered to modify. (Def.'s Mem. at 9-10). As an initial matter, this is a merits argument that has no role at the motion to dismiss stage of the case. But it also betrays a basic misunderstanding of what the NVRA mandates of a state's chief election official. As alleged in FAC ¶ 12 and described in more detail below, the Defendant is ultimately responsible *under federal law* for ensuring that the state's list maintenance program is reasonable. The fact that a state legislature may have adopted a deficient statutory procedure offers no more relief to a chief election official in her *federal* obligation to maintain a reasonable list maintenance program than would that same official's failure to implement a perfectly adequate state statutory procedure. The

ultimate touchstone is one of federal law, and the Defendant cannot hide behind state statutes in her failure to fulfill her duties under the NVRA.

## II. – Plaintiff Stated a Viable Claim Under the NVRA

Closely connected to her standing defense, Defendant contends that Plaintiff has failed to state a claim under the NVRA because the General Assembly in the Commonwealth has implemented a statutory procedure for removing deceased registrants from the voter rolls. (Def.'s Mem. at 10-14). This entirely circular argument amounts to, "We have a statutory procedure in place; therefore, *ipso facto*, it must be reasonable." That is not the law. Nor is it at all relevant, despite Defendant's suggestion to the contrary (Def.'s Mem. at 11, citing 1 PA. CONS. STAT. § 1922(1)), that the Pennsylvania legislature intends all its enactments to be reasonable. This case is governed by *federal law*. Any reasonableness determinations must be analyzed by what the NVRA requires, not what state law allows.

Plaintiff carefully set forth in its FAC why the Commonwealth has failed to implement a "reasonable" list maintenance program within the meaning of the NVRA. (FAC ¶¶ 17-21, 35-50). Those allegations, which will be proven at trial with the voting data Plaintiff has analyzed and a number of expert witnesses, demonstrate that the procedures utilized by

the state for removing the names of deceased registrants from the list of eligible voters are grossly inadequate and unreasonable. Whether the deficiencies are attributable to *Defendant's unwillingness* to implement a more effective list maintenance program or, as she seems to argue in her brief, a state statutory framework that does not *empower* her to do more than she is currently doing, is ultimately irrelevant.[2]

The language of the NVRA passed by Congress does far more than ask *if* a state is doing list maintenance. It asks instead *how effective* that maintenance is. The NVRA requires every state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant." 52 U.S.C. § 20507(a)(4)(A). While perfection is not required, a program that allows more than 21,200 dead individuals to remain on the rolls on the eve of a critical presidential election, 92% of whom had been dead for *more than a year* and nearly 10% of whom had been dead

---

[2] Whether the Defendant is following state law is a purely factual question that is not properly before the Court at this stage of the proceedings. It is worth noting, though, that State law authorizes both county registration commissions and the Defendant the ability to review the SURE system and take measures necessary to remove registrants no longer eligible due to death or change of address. *See* 25 PA. CONS. STAT. § 1222(c)(7), (c)(12).

for *more than a decade* (including another 1% who died more than twenty years ago) (FAC ¶ 40), is simply unreasonable. Plaintiff's experts at trial, who are current or former state election officials, will reinforce this point.

When Plaintiff confronted Defendant with these deficiencies, she stood silent. (FAC ¶¶ 31-32). Plaintiff offered to provide her its data and methodology – using a combination of the Social Security Death Index ("SSDI") (particularly the cumulative SSDI) and readily available third-party commercial databases – that demonstrate, if not conclusively than as close to conclusively as is possible, why and how the state's voter rolls remain so bloated with deceased registrants. Her response: more silence. Worse still, Defendant now effectively asks the Court to validate her decision to bury her head in the sand on this issue by arguing that "there is no requirement that states exhaust every conceivable methodology or utilize any particular database or procedure."

Plaintiff is not asking for absolute precision. But what Defendant is advocating is willful blindness, and Congress did not provide any such immunity in the NVRA. Quite the contrary. Plaintiff alleged (FAC ¶ 48) and will prove at trial with expert witness and fact testimony that any reasonable program to identify and remove the names of deceased

registrants from the list of eligible voters requires a state to consider and act upon credible data, including but not limited to the SSDI-refined information provided by Plaintiff.[3]  Disregarding credible data like that put forward by PILF here, just because it does not fit within the state's own statutory framework or policy directives, is the antithesis of "reasonable" and such passivity violates the NVRA.[4]

Meanwhile, the two cases Defendant cites for the proposition that the Court is without jurisdiction to order the state to modify its election procedures (Def.'s Mem. at 12) are inapposite.  Neither case involves the NVRA.  It is true that the Constitution generally dictates that the times, places, and manner of conducting federal elections is left to the discretion

---

[3] Ironically, the Commonwealth's Department of Auditor General noted in a December 2019 audit report on the State Uniform Registry of Electors system that the Defendant is not even fully utilizing the list of maintenance features that her department pays for as a member of the Electronic Registration Information Center, a non-profit organization whose mission is to assist states in improving the accuracy of voter rolls. https://www.paauditor.gov/Media/Default/Reports/Department%20of%20State_SURE%20Audit%20Report%2012-19-19.pdf (last accessed Dec. 14, 2020).

[4] Plaintiff did *not* concede that its voter registration data analysis is speculative, as Defendant falsely suggests (Def.'s Mem. at 5).  Plaintiff simply recognized that the SSDI, on extremely rare occasions, includes a false positive.  (FAC ¶ 38 n.1).  But when the names on the SSDI are then further cross-checked with commercial activity databases, the likelihood of a continued false positive would be close to zero.

of state legislatures.  U.S. CONST., art. 1, § 4.  But that same provision empowers Congress to alter such state regulations at any time, which is exactly what Congress did in the NVRA.  If Defendant is challenging the reach of Congress, then she is required to make that affirmative defense plain and explicit.  She has not done so.  In short, Plaintiff has pleaded a plausible cause of action under the NVRA.

### III. – Defendant is the Proper Party to be Sued in this Case

Finally, Defendant avers that, even if Plaintiff has stated a valid claim under the NVRA, injunctive relief is not available against *her* given that the Commonwealth assigns all list maintenance responsibilities to county registration commissions.  (Def.'s Mem. at 14).  This argument fails on multiple levels.

First, Pennsylvania state law directs to the Defendant the duty of developing, establishing, implementing, and administering the statewide voter registration system.  25 PA. CONS. STAT. § 1201(3).  State law also authorizes *both the county registration commissions and the Defendant* the ability to review that system and take measures necessary to remove registrants no longer eligible due to death or change of address.  *See id.* §§ 1222(c)(7), (c)(12).

14

Second, and much more importantly, federal law (i.e., the NVRA) mandates that all states designate a specific "State officer or employee as the chief State election official to be responsible for coordinating State responsibilities under [the statute]." 52 U.S.C. § 20509. In Pennsylvania, Defendant has been designated as that individual. 25 PA. CONS. STAT. § 1201. In that role, Defendant is "responsible for implementing the state's functions under the NVRA." S. Rep. No. 103-6, at 39.

At least three federal appellate courts have considered, and flatly rejected, the very argument Defendant advances here. *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014); *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008); *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008). All three held that the "coordination" responsibility thrust upon the state's chief election official by 52 U.S.C. § 20509 includes the power of enforcement. *Scott*, 771 F.3d at 839; *Harkless*, 545 F.3d at 451-53, *Missouri*, 535 F.3d at 851.

The Sixth Circuit's analysis in *Harkless* is particularly apt. There, the Ohio Secretary of State claimed that her role was extremely limited because the state had implemented most of its NVRA obligations through individual county departments, making those local officials – and not her

15

– responsible for compliance with the NVRA.  The court disagreed.  The court noted that the underlying purpose of the NVRA would be largely defeated if states could deflect their various responsibilities under the statute to individual local subdivisions.  *Harkless*, 545 F.3d at 452 ("If every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state.").  Indeed, the entire text of the NVRA "speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities."  *Id.*

Any other conclusion would also render the NVRA's notice provision in 52 U.S.C. § 20510(b)(1) – requiring plaintiffs to notify the chief election official before filing suit – illogical.  *Scott*, 771 F.3d at 839.  After all, the rationale behind this notice requirement is to give the state the chance to remedy the NVRA violation.  *Id.*  That only makes sense if the state's chief election official has the authority to fix those violations.  *Id.*

In short, the Defendant, as Pennsylvania's chief election officer, is "responsible for 'harmonious combination' – or implementation and enforcement – of [the NVRA] program on behalf of [the Commonwealth]."

16

*Harkless*, 545 F.3d at 452. This is not a responsibility she (or the state legislature for that matter) can simply slough off to individual counties and thereby avoid liability under the NVRA.

## CONCLUSION

For all the preceding reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

*/s/ Linda A. Kerns* (PA 84495)
Law Offices of Linda A. Kerns, L.L.C.
1420 Locust St., Ste. 200
Philadelphia, PA 19102
Tel: (215) 731-1400
Fax: (215) 701-4154
Email: linda@lindakernslaw.com

Bradley J. Schlozman (KS 17621)*
HINKLE LAW FIRM LLC
1617 N. Waterfront Parkway, Ste. 400
Wichita, KS 67206-6639
Tel: (316) 267-2000
Fax: (316) 264-1518
Email: bschlozman@hinklaw.com

Sue Becker (MO 64721)*
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington Street, Suite 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
Email: sbecker@publicinterestlegal.org

John Eastman (CA 193726)*
Center for Constitutional Jurisprudence
c/o Chapman Univ. Fowler Sch. of Law
One University Dr.
Orange, CA 92866
Tel: (877) 855-3330
Fax: (316) 264-1518
Email: jeastman@chapman.edu

*Admitted Pro Hac Vice

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Linda Kerns, hereby certify that, in compliance with Local Rule 7.8(b)(2), the foregoing "Response to Defendant's Motion to Dismiss First Amended Complaint" contains fewer than 5,000 words.  It contains 3,027 words (if the signature blocks are not counted) and 3,140 words (if the signature blocks are counted).

By: <u>/s/    Linda Kerns      </u>

## <u>CERTIFICATE OF SERVICE</u>

I, Linda Kerns, hereby certify that, on December 14, 2020, a true and correct copy of the foregoing "Response to Defendant's Motion to Dismiss First Amended Complaint" was filed with the Clerk using the CM/ECF system, which will send notifications of such filing to the email addresses of all counsel of record.


By: <u>/s/  Linda Kerns          </u>