IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION,** <br><br> Plaintiff, <br><br> v. <br><br> **KATHY BOOCKVAR,** <br><br> Defendant. | Civil Action No. 1:20-cv-1905 (Jones, C.J.) <br><br><br><br><br><br> Filed Electronically |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding enforcement of the National Voter Registration Act, 52 U.S.C. §§ 20501-11 ("NVRA"). Congress has vested the Attorney General with authority to enforce the NVRA on behalf of the United States. *See* 52 U.S.C. § 20510(a). Accordingly, the United States has a substantial interest in ensuring proper interpretation of the Act. The United States submits this Statement of Interest for the limited purpose of addressing the ability to bring suit against state officials to redress alleged NVRA violations and the availability of statewide relief in NVRA litigation.

The Public Interest Legal Foundation ("PILF") alleges that Secretary of the Commonwealth Kathy Boockvar has failed to undertake a reasonable effort to remove the names of deceased individuals from Pennsylvania's official list of eligible voters, in violation of Section 8 of the NVRA.  In turn, Secretary Boockvar argues that this Court cannot order injunctive relief because Pennsylvania law delegates voter list maintenance to local officials.

Secretary Boockvar is a proper defendant, as injunctive relief necessary to remedy a statewide Section 8 violation is available against a state's chief election official.  States may not evade statewide NVRA enforcement by delegating compliance obligations to local entities.  The United States expresses no view on matters unrelated to this issue.

### I.     Procedural Background

As this Court has found, the "Secretary of the Commonwealth of Pennsylvania is the chief election official of Pennsylvania and is responsible for coordination of the Commonwealth's responsibilities under the NVRA." *Pub. Int. Legal Found. v. Boockvar*, No. 1:20-cv-1905, 2020 WL 6144618, at *3 (M.D. Pa. Oct. 20, 2020).[1]  Pennsylvania conducts voter registration at the county level,

---

[1] *See also Assoc. of Comm. Org. for Reform Now v. Ridge & United States v. Pennsylvania*, Nos. 94-7671 and 95-382, 1995 WL 136913, at *5 (E.D. Pa. Mar. 30, 1995) (citing stipulation that "the state has appointed the Secretary of the Commonwealth as the Chief State Election Official to be responsible for the implementation of the NVRA in Pennsylvania").

2

and state law establishes a commission in each county with "jurisdiction over the registration of applicants, qualified electors and registered electors." 25 Pa. Cons. Stat. § 1203(a). County commissions must "cancel the registration of a registered elector reported dead by the Department of Health" and may conduct supplemental removal programs using obituaries and other relevant materials. *Id.* § 1505(a)-(b). State law also charges the Secretary of the Commonwealth, through the Department of State ("DOS"), to "[d]evelop, establish, implement and administer" a statewide voter registration database, the Statewide Uniform Registry of Electors ("SURE"). *Id.* § 1201(3). Among numerous requirements, the SURE system established by DOS must permit "each commission and the department to review and search the system and to permit the sending of notices to the appropriate officials regarding death, change of address or other information which could affect the qualifications of an applicant or the registration of a registered elector." *Id.* § 1222(c)(7).

The Secretary also must "promulgate regulations necessary to establish, implement and administer the SURE system," including "[p]eriodic training requirements." *Id.* § 1222(f). The Secretary has in fact promulgated numerous such regulations to implement the SURE system. For example, one regulation requires wide-ranging and detailed procedures for voter registration list maintenance, including processes for addressing duplicates, moves, and deaths.

3

*See* 4 Pa. Code § 183.6.  Another regulation provides that DOS "will review the compliance of the 67 commissions" and "will have complete access to the registration records for monitoring and enforcing compliance."  4 Pa. Code § 183.18(a).  DOS requires various reports from counties and can demand other reports as necessary.  *See* 25 Pa. Stat. § 2621(e); 4 Pa. Code § 183.17.  If a county fails to respond to a DOS information request or does not comply with substantive voter registration obligations, the Secretary can take enforcement action, which may include conducting an audit, seeking declaratory and injunctive relief in state court, and having the state treasurer withhold county funding.  25 Pa. Cons. Stat. §§ 1803, 1804; 4 Pa. Code § 183.18.

On October 15, 2020, the Public Interest Law Foundation sued Secretary of the Commonwealth Kathy Boockvar, in her official capacity, alleging a failure "to make reasonable efforts to conduct voter list maintenance programs that ensure that the deceased do not remain registered to vote, in violation of Section 8 of NVRA."  Compl. ¶ 32 (ECF No. 1).  Five days later, this Court denied PILF's request for a preliminary injunction.  *See Pub. Int. Legal Found.*, 2020 WL 6144618, at *1.  On November 5, PILF amended its complaint.  Am. Compl. (ECF No. 30).  Among other relief, PILF seeks an injunction requiring Secretary Boockvar to investigate registrants identified by the Foundation as deceased and to

implement "a reasonable and effective list maintenance program." Am. Compl. at 24.

Secretary Boockvar has now moved to dismiss the amended complaint. Mot. to Dismiss (ECF No. 31). As relevant here, the Secretary argues that injunctive relief is unavailable because the Pennsylvania General Assembly has delegated list maintenance responsibilities to county registration commissions. Def. Mem. 14 (ECF No. 32). Because Secretary Boockvar lacks "authority to repeal or rewrite these statutory provisions," the Secretary contends that PILF has failed to state a claim upon which relief can be granted. *Id.*

## II. Statutory Background

Section 8 of the NVRA, 52 U.S.C. § 20507, establishes requirements for the administration of voter registration for elections for federal office in covered states, including Pennsylvania.[2] Section 8(a)(4)(A) specifically requires covered states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant." 52 U.S.C. § 20507(a)(4)(A). State list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of

---

[2] Section 4(b) of the NVRA excludes certain states from the Act's requirements. *Id.* § 20503(b); *see also* U.S. Election Assistance Commission, *National Voter Registration Act Studies* (last visited Jan. 7, 2021), https://www.eac.gov/voters/national-voter-registration-act-studies (identifying the six states that claim exemption from the NVRA).

5

1965."  *Id.* § 20507(b)(1); *see also* S. Rep. No. 103-6, at 31 (1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); H.R. Rep. No. 103-9, at 15 (1993) (same).

Section 10 of the NVRA requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the Act.  52 U.S.C. § 20509.  Section 11(a) of the Act entrusts the Attorney General to enforce the NVRA on behalf of the United States, *see id.* § 20510(a), and Section 11(b) creates a private cause of action, *see id.* § 20510(b).  In most circumstances, private litigants must "provide written notice of the violation to the chief election official of the State involved" and wait a set time before filing suit.  *Id.* § 20510(b)(1)-(2).  The United States routinely enforces Section 8 and other provisions of the NVRA at the statewide level.  *See, e.g.*, *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008); Consent Judgment, *Judicial Watch and United States v. Grimes*, No. 3:17-cv-94 (E.D. Ky. July 3, 2018) (ECF No. 39), https://www.justice.gov/crt/case-document/file/1083361/download; Consent Decree, *United States v. Indiana*, No. 1:06-cv-1000 (S.D. Ind. Jul. 5, 2006), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/ in_nvra_cd.pdf; Order, *Assoc. of Comm. Org. for Reform Now v. Ridge & United States v.*

*Pennsylvania*, Nos. 94-7671 & 95-382, 1995 WL 136913 (E.D. Pa. Mar. 30, 1995).[3]

### III. Question Presented

Whether this Court should conclude that Secretary Boockvar, Pennsylvania's chief state election official, is a proper defendant in any statewide NVRA action?

**Suggested Answer:** Affirmative.

### IV. Argument

Secretary of the Commonwealth Boockvar is Pennsylvania's chief state election official for NVRA purposes; as such she is a proper defendant in any statewide NVRA action.[4]  Three Courts of Appeals have addressed the question currently before this Court, and they have uniformly and correctly held that injunctive relief is available against a chief state election official, regardless of whether state law expressly provides that official with enforcement powers.  *See*

---

[3] The United States can sue states directly in federal court.  *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 n.12 (1984).  When the United States sues states in voting rights cases, it typically also names state elections officials.  *See, e.g.*, *Missouri*, 535 F.3d at 844 (including both the State and the Secretary of State as defendants).  Private parties can sue state elections officials engaged in ongoing violations of federal law, in their official capacities, for prospective injunctive relief.  *See, e.g.*, *Action NC v. Strach*, 216 F. Supp. 3d 597, 613 (M.D.N.C. 2016) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).

[4] The United States takes no position as to whether any particular relief requested against Secretary Boockvar is warranted under the NVRA.  *See* Am. Compl. at 23-25.

*Scott v. Schedler*, 771 F.3d 831, 838-39 (5th Cir. 2014); *Harkless v. Brunner*, 545 F.3d 445, 451-55 (6th Cir. 2008); *Missouri*, 535 F.3d at 848-51. "Under the plain language of the [NVRA], the designated officer, here the Secretary, must coordinate state responsibilities." *Harkless*, 545 F.3d at 452. "'[C]oordination' includes enforcement power." *Scott*, 771 F.3d at 839. Thus, the Secretary, as Pennsylvania's chief state election official, has both the ability and responsibility for "implementation and enforcement" of NVRA programs. *Harkless*, 545 F.3d at 452. If a violation is proven, this Court may enjoin the Secretary to use such enforcement power to bring about NVRA compliance across the Commonwealth.

The Section 11(b) notice procedure reinforces the chief state election official's primary role and responsibility under the NVRA. As noted above, most private litigants must alert a chief state election official of an alleged NVRA violation and wait a fixed period before filing suit. *See* 52 U.S.C. § 20510(b). Section 11(b)'s language and legislative history "indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Assoc. of Comm. Org. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). "Requiring would-be plaintiffs to send notice to their chief election official about ongoing NVRA violations would hardly make sense if that official did not have authority to remedy NVRA violations." *Harkless*, 545 F.3d at 453; *see also Scott*,

8

771 F.3d at 839 (same). On the other hand, private litigants need not provide notice to local election officials before filing suit. By requiring written notice to the "chief election official of the State" only, 52 U.S.C. § 20510(b)(1), Congress signaled that states are ultimately responsible for NVRA violations committed by their local election officials and for fixing those violations.

State responsibility for NVRA compliance is particularly clear with respect to Section 8 list maintenance requirements. Section 8 mandates that "each *State* shall conduct" a general list maintenance program. 52 U.S.C. § 20507(a)(4) (emphasis added). "By its plain language, this requirement envisions the states will actively oversee a general program." *Missouri*, 535 F.3d at 849; *see also id.* at 850 ("After all, the term 'conduct' is an active verb, encompassing the concept of providing leadership." (citing *Webster's Third New Int'l Dictionary* 474 (1993))).[5] A State "may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted." *Id.* at 850. Section 8 similarly requires that "[a] *State* shall complete

---

[5] The same introductory phrase that Congress used in the NVRA—"each State shall"—similarly precludes states from shifting responsibility to localities for compliance with another federal voting rights law enforced by the United States—the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), even though local officials transmit ballots to UOCAVA voters and administer elections. *See United States v. Alabama*, 857 F. Supp. 2d 1236, 1238-39 (M.D. Ala. 2012) (finding the phrase "each State shall" to be an "explicit statutory directive" imposing "full responsibility" on the state for statewide UOCAVA compliance).

. . . any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" by a fixed date before a federal election, 52 U.S.C. § 20507(c)(2)(A) (emphasis added), although removals on account of the death of the registrant do not fall under this provision, *see id.* § 20507(c)(2)(B)(i). Where Section 8 implicates local registrars, it does so explicitly. *See, e.g.*, *id.* § 20507(g)(5) (requiring the "chief State election official" to notify "the voter registration officials of the local jurisdiction in which an offender resides" of information received about a felony conviction in federal court).

State law delegation of list maintenance responsibilities cannot supplant the NVRA framework. Otherwise, "[i]f every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state." *Harkless*, 545 F.3d at 452. "It would be plainly unreasonable to permit a . . . State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies." *United States. v. New York*, 255 F. Supp. 2d 73, 79 (E.D.N.Y. 2003).

To the extent Pennsylvania's state list maintenance laws impede the Commonwealth's ability to comply with the NVRA, they must yield. *See Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1, 9 (2013). Congress

enacted the NVRA pursuant to its authority under the Elections Clause to make or alter regulations governing the "Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. Art. I, § 4, cl. 1. Thus, if the NVRA and state "statutes do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter 'the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. ITCA*, 570 U.S. 1 (2013); *see also Kobach v. U.S. Elec. Assistance Comm'n*, 772 F.3d 1183, 1199 (10th Cir. 2014) ("Congress 'Elections Clause powers preempt state laws governing the 'Times, Places and Manner 'of federal elections, including voter registration laws."). The NVRA requires states to designate a chief state election official to coordinate state responsibilities under the Act. *See* 52 U.S.C. § 20509. Pennsylvania cannot designate a chief election official but then deprive that official of the powers needed to coordinate the Commonwealth's compliance with NVRA obligations.

Secretary Boockvar's arguments would require piecemeal enforcement against 67 county commissions or a single action against at least 67 different defendants. Indeed, the larger implications the Secretary's argument are even more daunting. Across the country, there are more than 10,000 local jurisdictions that conduct elections, including counties and—in some states—municipalities.

11

*See* Nat'l Conf. of State Legis., *Election Administration at State and Local Levels*, National Conference of State Legislatures (Feb. 3, 2020), https://www.ncsl.org/research/elections-and-campaigns/election-administration-at-state-and-local-levels.aspx.  Forcing the United States to proceed locality-by-locality in enforcing the NVRA against dozens or even hundreds of local jurisdictions in a given state would not only undermine the NVRA's plain language, it would severely strain the federal government's resources and inevitably leave many NVRA violations unremedied.  And naming dozens or hundreds of local jurisdictions as defendants in statewide lawsuits would invite chaos.  Thus, the NVRA does not require litigation against individual localities. *See, e.g.*, *United States v. New York*, 255 F. Supp. 2d at 81 (concluding that "the burdens that would be imposed upon the Attorney General [and private plaintiffs] would be palpable if they had to resort to litigation against multiple local agencies in lieu of holding State[s] . . . fully accountable for compliance with the NVRA."); *United States v. New York*, 700 F. Supp. 2d 186, 206 (N.D.N.Y. 2010) (noting federal interest in streamlined NVRA actions against statewide officials).[6]  Even partial enforcement authority renders a state official a proper defendant, despite a

---

[6] When appropriate, the United States also can and sometimes does bring targeted NVRA enforcement actions against individual subjurisdictions. *See, e.g.*, Consent Judgment and Decree, *Common Cause & United States v. Bd. of Elections*, No. 1:16-cv-6122 (E.D.N.Y. Dec. 14, 2017) (ECF No. 66), https://www.justice.gov/crt/case-document/file/1077921/download.

lack of unilateral control over local entities. *See United States v. New York*, No. 5:04-cv-428, 2007 WL 951576, at *3 (N.D.N.Y. Mar. 27, 2007). And once the state official with "primary authority" to manage an electoral system has been named, local officials are not required parties. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1342-47 (N.D. Ga. 2019) (declining to require joinder). Individual offices that must comply with NVRA requirements "do not have their own interests," even if compliance may impose costs and require changes in procedures. *United States. v. New York*, 700 F. Supp. 2d at 204-06.

Finally, to the extent Secretary Boockvar is arguing the existence of *any* voter registration list maintenance system satisfies the NVRA and the Court need not assess the reasonableness of the State's efforts, the Secretary is in error. Further, it is not clear whether federal preemption is necessary here, as the Secretary of the Commonwealth, through DOS, possesses significant authority concerning voter registration and list maintenance procedures, as described above. In any case, the question whether the general program of list maintenance DOS undertakes in fact amounts to a "reasonable effort" to remove ineligible voters under Section 8 of the NVRA goes beyond the simple existence of state laws and procedures, to include consideration of the actual efforts undertaken pursuant to those laws and procedures. Indeed, the NVRA requires states to "*conduct* a general program that makes a reasonable effort to remove the names of ineligible

13

voters." 52 U.S.C. § 20507(a)(4) (emphasis added). States cannot meet this requirement merely by pointing to the existence of a state statute, regulation, or delegation. Indeed, there must be evidence that the state actually "conduct[s]" the required "general program." *Id.*; *see also, e.g.*, *Bellitto v. Snipes*, 935 F.3d 1192, 1205-07 (11th Cir. 2019) (considering whether jurisdiction's actual practices regarding removals for deaths amounted to reasonable effort to remove ineligible voters); *Missouri*, 535 F.3d at 850 ("Under the NVRA's plain language, [a state] may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted."). The United States takes no position here on whether the adopted state laws and procedures, and the actual efforts undertaken pursuant to those procedures, meet the State's responsibilities under the NVRA.

## V.     Conclusion

Secretary Boockvar's contention that she is not a proper defendant and that no statewide relief is available does not depend on the validity of Plaintiff's underlying allegations. As Pennsylvania's chief state election official, responsible for implementing the Commonwealth's NVRA responsibilities, Secretary Boockvar is a proper defendant and statewide relief against such an official can be sought under the NVRA. The Secretary's argument, if accepted, would contravene the NVRA's plain language and impede statewide enforcement of the NVRA by

requiring piecemeal or chaotic litigation to ensure the uniform, non-discriminatory list maintenance required by the Act.

Date:  January 7, 2021

                                              Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

JOHN B. DAUKAS
Principal Deputy
Assistant Attorney General

*/s/ T. Christian Herren Jr.*
T. CHRISTIAN HERREN JR.
RICHARD DELLHEIM
MAUREEN RIORDAN
DANIEL J. FREEMAN
AMANDA HINE
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 307-2767
chris.herren@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION,**<br><br>　　　　**Plaintiff,**<br>　v.<br><br>**KATHY BOOCKVAR,**<br><br>　　　　**Defendant.** | **Civil Action No. 1:20-cv-1905**<br>**(Jones, C.J.)**<br><br><br><br><br>**Filed Electronically** |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2021, I electronically filed the foregoing Statement of Interest with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

　　　　　　　　　　　　　　　　　*/s/ Michael J. Butler*
　　　　　　　　　　　　　　　　　Michael J. Butler
　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　PA 81799
　　　　　　　　　　　　　　　　　228 Walnut Street, 2nd Floor
　　　　　　　　　　　　　　　　　P.O. Box 11754
　　　　　　　　　　　　　　　　　Harrisburg, PA  17108-1754
　　　　　　　　　　　　　　　　　Tel: (717) 221-4482
　　　　　　　　　　　　　　　　　Fax: (717) 221-2246
　　　　　　　　　　　　　　　　　Michael.J.Butler@usdoj.gov