# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | No. 1:20-cv-01905 |
| Plaintiff, | |
| | CHIEF JUDGE JONES |
| v. | |
| KATHY BOOCKVAR, in her Official Capacity, | ELECTRONICALLY FILED |
| Defendant. | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

The opposition brief filed by The Public Interest Legal Foundation ("PILF") offers no effective response to Secretary Boockvar's compelling demonstration that PILF lacks standing to seek to vindicate its own preferred list maintenance methodology through litigation, fails to allege any facts that plausibly suggest that Pennsylvania's list maintenance program is unreasonable, and the specific injunctive relief that PILF seeks is impossible. PILF's First Amended Complaint should be dismissed.

## ARGUMENT

I. **PILF Lacks Standing To Bring a Claim Under the NVRA Challenging the Reasonableness of Pennsylvania's Statutory List Maintenance Programs.**

As in the recently decided *Carney v. Adams*, "[t]his case begins and ends with standing." 141 S. Ct. 493, 498 (2020). The Supreme Court reinforced in *Carney* that "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." *Id.* (citations omitted). PILF concedes that generalized grievances and the cost of monitoring legal compliance are not sufficient, Opp'n Br. (Doc. No. 33) at 6, but nothing more is alleged in the First Amended Complaint. PILF is not in any way injured by Pennsylvania's statutory list maintenance program and as a result lacks standing to seek to replace the statutory program through this litigation.

PILF attempts to recast its disagreement with the statutory program as frustration of its "core mission," *id.* at 6-7, but the law is clear that an organization's mere interest in a problem does not confer standing "no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Where an organization "seek[s] to do no more than vindicate [its] own value preferences through the judicial process," there is no injury in fact and no standing. *Id.* at 740.

That is exactly the situation here. PILF's self-described mission is to "promote the integrity of elections nationwide through research, education, remedial programs, and litigation" and PILF professes to dedicate time and resources "to ensure that voter rolls in the state of Pennsylvania do not contain ineligible registrants." Am. Compl. ¶ 3. PILF's particular interest in list maintenance does not render it aggrieved under the NVRA and does not confer standing to pursue this action.

    Not surprisingly, PILF does not even address *Sierra Club v. Morton* in its opposition. Instead, PILF tries to analogize its regular monitoring of legal compliance to disruptions suffered by voter rights organizations as a result of legal changes affecting the services they offer. Opp'n Br. at 7-8.[1] There is no comparison. PILF does not and cannot allege any injury or alteration to its operations. Again, PILF claims to be aggrieved only because its "essential and core mission [is] fostering compliance with federal election laws and promoting election integrity." Am. Compl. ¶ 56. PILF alleges that it furthers this mission through "litigation" and "communicat[ion] with election officials about problems or defects found in list maintenance practices and about ways to improve those

---

[1] It is noteworthy that even the *Lawson* case, on which PILF heavily relies, Opp'n Br. at 8-9, recognizes that organizations do not have standing "based solely on the baseline work they are already doing" and "cannot convert ordinary program costs into an injury in fact" or "manufacture the injury by simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Common Cause Indiana v. Lawson*, 937 F.3d 944, 955-56 (7th Cir. 2019) (citations and internal punctuation omitted).

practices," *id.* ¶ 3, and that its efforts in Pennsylvania forced it to "divert its . . . resources from other states ***with similar issues***," *id.* ¶ 6 (emphasis added).  This litigation and PILF's communications with state election officials admittedly constitute PILF's regular activities and therefore are not injuries in fact under controlling Third Circuit precedent.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285-86 (3d Cir. 2014) (expenditures consistent with organization's "typical activities" do not confer standing); *Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78 & n.5 (3d Cir. 1998) (investigation to determine compliance with law conducted as part of "normal day-to-day operations" and litigation expenses do not confer standing).

Put simply, PILF does not and cannot allege that it suffered any harm to its operations or incurred any additional expense as a result of the way in which the Commonwealth identifies and removes deceased registrants.  The First Amended Complaint presents a classic generalized grievance insufficient to confer Article III standing and must therefore be dismissed.

**II.     PILF Fails To Allege a Plausible Claim for Relief Under the NVRA.**

Even if PILF were able to establish standing, the First Amended Complaint fails to state a claim because it contains no factual allegations that plausibly suggest that the Commonwealth's list maintenance program is unreasonable.

PILF fundamentally misconstrues the NVRA in proposing that its preferred methodology should be compelled because it represents "a more effective list maintenance program," Opp'n Br. at 11, and incorporates "credible data" that the Commonwealth's statutory program does not utilize, *id.* at 13. The NVRA does not require any particular process or use of any particular database and certainly does not invite or allow interest groups like PILF to substitute their preferences for legislative policy judgments. The NVRA actually requires that states "conduct a general program that makes *a reasonable effort* to remove the names of ineligible voters. . . ." 52 U.S.C. § 20507(a)(4)(A) (emphasis added). PILF does not allege any facts that suggest that the Commonwealth is failing to make a reasonable effort to remove the names of deceased registrants. The significant number of deceased registrants whose names have been removed—over 180,000 registrants in 2018 and 2019 alone, *see* Def.'s Br. in Supp. of Mot. To Dismiss (ECF No. 32) at 5 n.2—makes it impossible to allege or substantiate any claim of unreasonableness.

PILF acknowledges the Commonwealth's program for removal of deceased registrants, First Am. Compl. ¶¶ 14-16, 20, but prefers that the Commonwealth use its preferred methodology, Opp'n Br. at 12-13. Not incorporating another suggested methodology is not *per se* unreasonable as PILF seems to imply. Nor is the Commonwealth's program unreasonable simply because PILF claims to have identified additional suspected deceased registrants. *Id.* at 11-12. This Court has

already rejected that argument.  *Public Int. Legal Found. v. Boockvar*, --- F. Supp. 3d ---, 2020 WL 6144618, *3 (M.D. Pa. Oct. 20, 2020) ("Plaintiff argues that the sheer number of allegedly deceased registered voters it has uncovered is 'a hallmark of an unreasonable list maintenance program.'  We disagree.") (ECF citation omitted).

PILF does not and cannot allege facts that plausibly suggest the Commonwealth is not making a reasonable effort to remove deceased registrants and as a result plainly fails to state a claim for relief under the NVRA.

### III. **<u>PILF Fails To State a Plausible Claim for Injunctive Relief.</u>**

PILF fails to state a claim because the injunctive relief sought—a court order commanding the Secretary to remove the names of suspected deceased voters identified by PILF and implement PILF's alternative list maintenance program, First Am. Compl. at 23-24—is unavailable.

PILF misses the point in asserting that Secretary Boockvar is the Chief Election Officer charged with "coordination of State responsibilities" under the NVRA.  Opp'n Br. at 15, citing 52 U.S.C. § 20509.  This delegation of responsibility does not confer authority to rewrite Pennsylvania statutes or bind county officials to any order that may be issued in this proceeding.  *See generally In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020*, --- A.3d ---, 2020 WL 6866415, at *15 n.6 (Pa. Nov. 23, 2020) ("[T]he Secretary has no authority to

order the sixty-seven county boards of election to take any particular actions with respect to the receipt of ballots."), *pet. for cert. docketed*, No. 20-845 (Dec. 23, 2020). The specific injunctive relief sought here is not available from the Secretary.

PILF is also wrong in arguing that state law authorizes both the counties and the Secretary to remove registrants. Opp'n Br. at 11 n.2. The statutory provision cited by PILF, 25 Pa. C.S.A. § 1222, relates to the Statewide Uniform Registry of Electors ("SURE"), which is the centralized database of information relating to registered electors in the Commonwealth. Section 1222 addresses the functions of the SURE system but does not authorize the Secretary to remove deceased registrants from the rolls. Rather, list maintenance responsibilities are delegated by statute to county commissioners. 25 Pa. C.S.A. § 1203(a), (b)(1); 25 Pa. C.S.A. § 1505(a); 25 Pa. C.S.A. § 1901(a), (b).

Because Secretary Boockvar is without authority to repeal or rewrite statutes or cancel specific voter registrations, the specific injunctive relief that PILF seeks is impossible.

## **CONCLUSION**

For the reasons above and in Secretary Boockvar's opening brief, the First Amended Complaint should be dismissed due to lack of standing or, in the alternative, due to failure to state a claim upon which relief can be granted.

                                        Respectfully submitted,

                                        <u>/s/ Donna A. Walsh</u>
                                        Daniel T. Brier
                                        Donna A. Walsh
                                        Suzanne P. Conaboy

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:  January 7, 2021

# CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Reply Memorandum in Further Support of Motion To Dismiss First Amended Complaint was served upon the following counsel of record via the Court's ECF system on this 7th day of January 2021:

> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, L.L.C.
> 1420 Locust St., Ste. 200
> Philadelphia, PA 19102
>
> Sue Becker, Esquire
> Public Interest Legal Foundation
> 32 E. Washington Street, Suite 1675
> Indianapolis, IN 46204
>
> John Eastman, Esquire
> Center for Constitutional Jurisprudence
> c/o Chapman University Fowler School of Law
> One University Drive
> Orange, CA 92866
>
> Bradley J. Scholzman, Esquire
> Hinkle Law Firm
> 1617 N. Waterfront Parkway, Ste. 400
> Wichita, KS 67206-6639

/s/ Donna A. Walsh